138 So.2d 1

Alexson CHAPMAN et al.

v.

Harold B. BORDELON, Mayor of the
Town of Ville Platte.

No. 45851.

Feb. 19, 1962.

Frugé & Foret, Jack C. Frugé, J. Emile Coreil, Ville Platte, for defendant-appellant.

Preston N. Aucoin, Ville Platte, for plaintiffs-appellees and in pro. per.

HAWTHORNE, Justice.

This case arose in the Town of Ville Platte, a municipality governed by the Lawrason Act, following a municipal election. The pleadings and facts are clearly set forth in the opinion of the Court of Appeal (see 132 So.2d 533), and it is not necessary to reiterate them here except to say that the board of aldermen of the town at its first meeting, by motions adopted by a vote of three to two, named and appointed 24 persons employees of the town [1] and in addition named and appointed a street commissioner, a city attorney, and a city treasurer, and that these motions were vetoed by the mayor. According to relator, the board of aldermen sought to override the mayor's veto but failed to get the necessary two-thirds vote, and respondents concede that the facts as given by relator are correct.

The case is before us under our supervisory jurisdiction to review a judgment of the Court of Appeal, Third Circuit, in which the majority of that court was of the view that in a town governed by the provisions of Act 136 of 1898, known as the Lawrason Act, R.S. 33:321–481, "all employees and officers are appointed solely by the Board of Aldermen since this is an administrative act granted solely to that board, except that in the case of a tie vote, the Mayor may cast the deciding vote", and that the mayor cannot legally and validly veto motions made by the board of aldermen naming the employees and officers as this is an administrative act of the majority of the board of aldermen, the mayor's veto power being limited to legislative acts of the board.

After trial on the merits in the district court the judge held that the mayor did not have the power to veto the motions naming mere employees adopted by a majority of the board of aldermen but did have the veto power over the election by the board of the city attorney, the street commissioner, and the city treasurer.

The Court of Appeal reversed the judgment of the district court insofar as it decreed that the mayor has the veto power over the election by the board of aldermen of the street commissioner, the city treasurer, and the city attorney, specifically holding that the mayor does not have the right to veto the motions adopted by the board of aldermen electing these officers. In all other respects the judgment of the district court was affirmed.

1. These employees were to fill the positions, among others, of members of police force, janitor of the jail, truck driver, street sweeper operator, laborers on trucks, etc.

One of the judges of the Court of Appeal dissented in part. He agreed with the majority's holding that the mayor has no veto power in regard to the election by the board of aldermen of the city attorney, the street commissioner, and the city treasurer, but dissented from the holding "that under the Lawrason Act the mayor has no veto power with regard to administrative ordinances, including those hiring or firing city employees".

The mayor, relator in this court, concedes that the opinion of the Court of Appeal is correct in holding that he, as mayor, has no power to veto the motions of the board of aldermen naming and appointing the city attorney, the street commissioner, and the city treasurer, and this phase of the case is no longer an issue here. This concession was made evidently because the Lawrason Act plainly provides that the *officers* of every municipality shall be a mayor, aldermen, a marshall, a tax collector, a clerk, and a street commissioner; that the mayor, the aldermen, and the marshall shall be elected by the people, and the other officers by the board of aldermen (R.S. 33:381); that at the first regular meeting of the board of aldermen succeeding each regular municipal election *they* shall elect a clerk, a tax collector, and *all necessary officers* whose election is not provided for in R.S. 33:381, and that the board of aldermen may annually appoint an attorney at law for the municipality,

prescribe his duties, and fix his compensation (R.S. 33:386). It is evident that the relator is conceding that the city treasurer is an officer within the meaning of the act and as such is elected solely by the board of aldermen, as are the street commissioner and the city attorney, and that their election is not subject to the power of veto by the mayor. We shall accordingly affirm the judgment of the Court of Appeal insofar as it concerns the municipal officers.

Relator in this court first argues that under the Lawrason Act the mayor possesses the sole power and authority to name and appoint, or hire, all non-officer employees of the municipality. In the alternative he argues that these employees are named and appointed by the mayor *and* the board of aldermen, and that the mayor possesses the power to veto motions adopted by the board of aldermen naming these employees.

In support of his first argument relator calls our attention to R.S. 33:404, which sets forth the duties of the mayor and which provides in part:

"The mayor shall preside at all meetings of the board of aldermen, and in case there is an equal division, he shall give the deciding vote. He shall have the superintending control of all offices and affairs of the municipality; shall actively and vigilantly see that all the laws and ordinances

are properly executed and enforced; may veto any law, by-law, or ordinance; notwithstanding the exercise of the veto power, any law or ordinance may be adopted, if two-thirds of the aldermen vote thereafter in favor of its adoption. * * *"

Relator argues that the provision of this section that the mayor "shall have the superintending control of all offices and affairs of the municipality" vests in the mayor alone the power and authority to hire municipal employees since this power is administrative or executive in nature, and there is no provision of the act giving the aldermen any administrative or executive power, all of the administrative and executive power being vested in the mayor.

■ It is true, as argued by relator, that the power to hire municipal employees is administrative or executive in nature, but we do not agree with his contention that the act vests all executive and administrative power in the mayor. For instance, as we shall point out, the powers to prescribe the duties and fix the compensation of employees, to provide for their discharge for misconduct or neglect of duty, to provide for creating certain municipal officers other than those required by the act—all administrative or executive powers—are not vested in the mayor alone, but are vested in the mayor and the board of aldermen. Moreover, the act specifically

gives to the board of aldermen alone the power to name the tax collector, the clerk, the street commissioner, and the city attorney, and this is a power executive in nature. The act, as pointed out by relator, does vest in the mayor "the superintending control of all offices and affairs of the municipality", and ' this provision should be given effect; but when it is considered in context with the provisions of the act as a whole which we shall discuss later, it cannot be construed to vest in the mayor alone the power to name and appoint municipal employees. Insofar as naming the municipal employees, the power thus vested in the mayor is exercised principally by the use of his veto power, which we shall discuss later.

As conceded by all parties, there is no provision in the act which specifically gives either to the mayor alone or to the board of aldermen alone the power and authority to name and hire employees of the municipality. Therefore, in order to determine how employees of the municipality are to be named or appointed, we must consider the act as a whole to ascertain the intent of the lawmakers, at the same time giving effect to each provision of the statute if it is possible to do so.

In general, our statutes provide for three principal forms of municipal government— the mayor and board of aldermen type, the commission plan, and the commission and

city manager plan. The form with which we are here dealing is the mayor-aldermen plan provided in R.S. 33:321–481. Let us consider the sections of that statute which vest power in the mayor and the board of aldermen.

Section 362 provides that the powers hereby granted shall be exercised by the mayor *and* the board of aldermen of the municipality. Sub-part E, entitled "Functions of Mayor and Board of Aldermen", Section 401, styled "Powers of mayor and aldermen * * *", specifically provides: "(A) The mayor *and* board of aldermen of every municipality shall have the *care, management,* and *control* of the municipality and its property and finances. *They* shall have the power: * * *." Numerous and specific legislative, fiscal, and administrative powers are then set forth in some 32 numbered subdivisions, among which are found the following:

"(30) To provide for municipal officers other than those required by this Part who may be found necessary; to prescribe the duties and fix the compensation of all officers and *employees*, subject to any applicable civil service law; and to require bonds with sureties for the performance of duties from all officers and employees.

"(31) To provide for the removal of officers and discharge of *employees* for misconduct or neglect of duty, subject to any applicable civil service law." (Italics ours.)

Section 402 confers additional powers on the governing authority of such municipalities, providing: "The following additional powers are conferred on the mayor *and* aldermen of cities and towns * * *", etc. (Italics ours.) See also Section 403.

Thus it will be seen that under the provisions of the statute broad and numerous powers are vested in the mayor *and* the board of aldermen, among these being the care, management, and control of the municipality, its property and finance; to provide for the removal of officers and discharge of *employees* for misconduct or neglect of duty; to prescribe the duties and fix the compensation of all officers and *employees*; to require bond with sureties for performance of duties from all officers and employees. Since, as we have pointed out, there is nothing in the act which specifically gives the power of appointing employees either to the mayor alone or to the board of aldermen alone, we must conclude that this power is vested in the governing authority of the municipality, the mayor *and* the board of aldermen.

As to relator's alternative argument, the majority of the Court of Appeal was of the view that the mayor's power of veto was limited to legislative acts of the board of aldermen, and that his veto of the motions adopted by the board of aldermen in the instant case was invalid because he was attempting to veto an administrative

act of the majority of the board of aldermen.

R.S. 33:404 provides that the mayor "may veto any law, by-law, or ordinance adopted; notwithstanding the exercise of the veto power, any law or ordinance may be adopted, if two-thirds of the aldermen vote thereafter in favor of its adoption".

The Court of Appeal considered the definitions of the words "law", "by-law", and "ordinance" given in the Civil Code and a law dictionary, and concluded that the motions adopted by the board of aldermen naming the city employees do not come within the definition of any of these words, and that the mayor therefore does not possess the power to veto these motions.

We agree that these motions cannot be considered either "laws" or "by-laws", but we believe that the Court of Appeal's interpretation of the word "ordinance" was entirely too narrow when it construed that word as used in this provision to mean only a legislative act.

■ Generally the word "ordinance" is understood to mean a legislative act of a municipality, as the Court of Appeal construed it. This is not necessarily so in all cases, however, for, as the judge of the Court of Appeal who dissented in the instant case said, "ordinance" is often used as a generic term which encompasses all of the acts of a municipal board or council whether administrative or legislative in nature. In support of this statement he cited McQuillan, The Law of Municipal Corporations (3rd ed. 1949), v. 5, sec. 15.08, pp. 71 ff. McQuillan points out that technically an ordinance differs from a resolution or other form of expression or action of a municipal legislative body, but that sometimes it is used interchangeably with the words "by-law", "resolution", "regulation", "order", etc. Thus it will be seen that the word "ordinance" can have a very broad or quite a narrow meaning; that it can refer to all of the legislative enactments of a municipality, such as motions, resolutions, decrees, laws, etc., or can simply mean a permanent rule of action commonly known as a law.

■ As we view the matter, the Legislature used the word "ordinance" in this section in its broad sense rather than in its narrow one, so as to include both legislative and administrative enactments. The word "ordinance" is used many times throughout the statute to designate acts by the board of aldermen which are administrative in character. For instance, the statute provides that every warrant drawn on the treasury shall cite, among other things, the ordinance authorizing its issuance (R.S. 33:462); that the clerk "shall keep such other books and records as may be provided for by ordinance" (R.S. 33:-421); that the tax collector shall "perform all other duties required of him by ordinance" (R.S. 33:424); and that the treas-

urer and the street commissioner shall each perform all other duties that may be required of him by ordinance (R.S. 33:425, 426).

■ Since the term "ordinance" is sometimes used very broadly to mean any act of the legislative body of a municipality, since in the Lawrason Act itself the drafters frequently used the word to refer to an act of an administrative nature, and since under R.S. 33:401–404 the mayor is given equal power with the board of aldermen in the management of the municipality, we think it is imperative that the term "ordinance" in R.S. 33:404 be given its broadest possible interpretation in order to enable the mayor to exercise his veto against any act or measure of the board whether legislative or administrative in character, except in cases in which the power to act is vested exclusively in the board of aldermen as in the election of certain officers and the city attorney.

To deny that the mayor has veto power over administrative ordinances would be to make him practically a figurehead, his primary duty in such a case being to preside at the meetings and to vote in the rare cases when his vote is needed to break a tie vote of the board of aldermen. Such a holding would have the effect of depriving the mayor of "the superintending control of all offices and affairs of the municipality", which is given to him expressly in the statute.

In arriving at our conclusion in this case we have practically accepted the views expressed by the dissenting judge of the Court of Appeal, who in a well written dissent with which we are much impressed has correctly analyzed and interpreted the statute.

For the reasons assigned it is ordered that the judgment of the Court of Appeal, Third Circuit, decreeing that the mayor does not have the right to veto the action of the board of aldermen electing the street commissioner, the treasurer, and the city attorney is affirmed. It is further ordered that the judgment of the Court of Appeal affirming the judgment of the district court which decreed that the mayor does not have the power to veto the motions naming and appointing the city employees is annulled, reversed, and set aside, and accordingly it is adjudged and decreed that the mayor does have the power to veto the motions passed by a majority of the board of aldermen naming and appointing the municipal employees. All costs allowed by law are to be paid by respondents.

HAMITER, J., concurs in part and dissents in part, assigning written reasons.

HAMITER, Justice (concurring in part and dissenting in part).

I agree with the majority's determination of all of the issues presented by this cause

except that one which relates to the Mayor's right to veto motions adopted by the Board of Aldermen in the appointment of municipal employees.

It is my opinion that adopted motions of the mentioned kind cannot be considered "ordinances" within the contemplation and intendment of the Lawrason Act in view of LRS 33:406 (an integral part of the statute) which recites: "Enactment, recording, and publication of ordinances. The style of all ordinances shall be: 'Be it ordained by the mayor and board of aldermen of the City (Town or Village, as the case may be) of ........' All ordinances shall, within twenty days after they are passed, be published once in the official journal of the municipality or if there be none, in some newspaper of general circulation therein. Ordinances shall not be enforced, unless for cause the contrary be ordered, until ten days after their publication. All ordinances shall be read and considered by sections at a public meeting of the mayor and board of aldermen, and, if adopted, shall be signed by the mayor or other officer presiding in his absence. The vote on their final passage shall be taken by 'yeas' and 'nays,' which shall be entered on the minutes by the clerk. A vote shall never be taken on an ordinance not previously reduced to writing. An ordinance shall contain only one subject, which shall be indicated in its title. An ordinance which is amended or revised shall set forth in full the section as amended or revised. The clerk shall keep a book to be styled 'Ordinances, City (or Town, or Village) of ........,' in which he shall file the original of every ordinance which has been adopted immediately after its passage; he shall append to each a note stating the date of its passage and cite therein the book and page of the minutes containing the record of its passage. The ordinances to be so recorded are those which are in their nature laws of the municipalities, and not mere orders or decrees temporary in their nature. As amended Acts 1950, No. 417, § 1."

Obviously, the mandatory ordinance requirements of the quoted provisions were not intended to and do not apply to the simple employment motions under consideration here. Rather, all relate to proposals legislative in character or those which are designed for the establishment and regulation of policy in the interest of promoting a more efficient municipal government. Pertaining to proposals falling in the latter category, incidentally, are the several statutory provisions referred to in the majority opinion (LRS 33:421, 424, 425, 426 and 462) as being illustrative of a legislative intent that the word "ordinance" is often used in the statute "to designate acts by the Board of Aldermen which are administrative in character."

An interpretation that the statute authorizes the Mayor to veto simple motions appointing employees could conceivably re-

sult in an impasse of indefinite duration between such official and the Board of Aldermen that might prove disastrous to the municipality. Thus where an inability to override vetoes exists, as in this case, there could possibly be a continual rejecting by the Mayor of all Board of Aldermen employee selections which, as a consequence, would compel an almost complete cessation of governmental operations and undertakings. Clearly the Lawrason Act does not contemplate the occurrence of such a result.

Accordingly, my conclusion is that the judgment of the Court of Appeal should be affirmed.

138 So.2d 7