775 So.2d 1223 (2000)
Marliam LEE
v.
Mike GRIMMER and Janet Borne.
No. 99 CA 2196.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1224 Scott D. Wilson, Baton Rouge, for Plaintiff-Appellee Marliam Lee.
John G. Allelo, Crawford & Lewis, Baton Rouge, for Defendants-Appellants Mayor Mike Grimmer and the Board of Aldermen of the Town of Walker.
Before: PARRO, GUIDRY, JJ., and SIMON[1], Judge Pro Tem.
PARRO, J.
The mayor (Mike Grimmer) and board of aldermen of the Town of Walker (Walker) appeal from that portion of the trial court's judgment which partially granted a local police officer's motion for summary judgment, based on a finding that the board of aldermen violated applicable statutes in terminating the police officer. For the following reasons, we affirm.

Facts and Procedural History
Marliam Lee (Lee) was hired as a Walker police officer in 1981 by the chief of police for Walker, who is an elected official.[2] On December 9, 1996, without a recommendation by the chief of police, Lee was terminated by action of the board of aldermen (Board) by a vote of three to one. In fact, Walker's chief of police deliberately chose not to recommend termination of Lee, who was a longtime friend of his, and, only after the proceeding had begun, recommended a suspension.
Lee filed a petition against Walker's mayor and town clerk, concerning the production of information relating to the town meeting held on December 9, 1996.[3] Subsequently, his petition was supplemented and amended to assert a claim concerning the propriety of his termination. In particular, he sought a judgment declaring that the mayor and town clerk's actions were in violation of his constitutional rights. The Board was added as a defendant by Lee's second supplemental and amending petition.
Lee filed a motion for partial summary judgment on the issue of liability based on allegations of wrongful discharge. Following a hearing on this matter, the trial court found that the Board violated applicable statutes in the procedure it used to terminate Lee as a police officer. Based on this finding, it granted, in part, Lee's motion for summary judgment. Walker's mayor and the Board appeal from that portion of the trial court's judgment, which partially granted Lee's motion for summary judgment.[4] They contend the trial court erred as a matter of law in finding that the Board violated the applicable statutes in the procedure it used to terminate Lee as a Walker police officer. Lee has filed an *1225 answer to the appeal seeking damages and attorney fees for frivolous appeal.

Summary Judgment
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La. App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).

Termination
The issue before this court on appeal is whether the employees of a police department with an elected chief of police in a Lawrason Act municipality may be terminated by the mayor and board of aldermen without the recommendation of the chief of police. This same issue was before the court in Thibodeaux v. Hernandez, 97-602 (La.App. 3rd Cir.10/29/97), 702 So.2d 1157, concerning the dismissal of a local police officer by a board of aldermen in a Lawrason Act municipality for failure to attend the police academy and apparently due to considerable concern as to the physical health of the 350-pound officer.
The court in Thibodeaux v. Hernandez examined LSA-R.S. 33:362, 404, and 423. The version of LSA-R.S. 33:404 in effect on December 9, 1996, set forth the duties of the mayor, in pertinent part, as follows:[5]
A. The mayor shall have the following powers, duties, and responsibilities:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law. All administrative staff shall be subordinate to the mayor.
(2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
(3) Subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517 shall be subject to approval by the board of aldermen of that municipality.
* * * * * *
B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2, and R.S. 33:423.3. (Emphasis added.)
Concerning the exercise of legislative powers, the version of LSA-R.S. 33:362(A) in *1226 effect on December 9, 1996, provided in relevant part:[6]
(1) The legislative powers of a municipality shall be vested in and exercised by the board of aldermen.
* * * * * *
(3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
The duties of a marshal are set forth in LSA-R.S. 33:423(A) as follows:
The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed. (Emphasis added.)
In light of these statutory provisions and after examining LSA-R.S. 33:423, the court in Thibodeaux v. Hernandez held that the use of the word "shall" in mandating a recommendation by the chief of police to the mayor and board of aldermen as to the discharge of police personnel was intended by the legislature to impose more than an obligation on the chief of police, but constituted, in effect, a check on the mayor and board of aldermen, who otherwise could make such critical personnel decisions without the input or concurrence of the chief of police. Thibodeaux v. Hernandez, 702 So.2d at 1159. Based on this holding, the court concluded that the mayor and board of aldermen lacked authority to unilaterally terminate the police officer's employment without the recommendation of the elected chief of police. See Thibodeaux v. Hernandez, 702 So.2d at 1159.
We agree with the third circuit's interpretation of the pertinent statutory provisions. However, we note that the court in Thibodeaux v. Hernandez seemingly made its interpretation contingent on the facts of the case and implied that its interpretation might have differed had the case involved a contest regarding the police officer's hiring and whether his qualifications then measured up to the municipality's requirements. Thibodeaux v. Hernandez, 702 So.2d at 1159. With this contingency, we disagree. We fail to see how the pertinent statutory provisions could be subject to varying interpretations depending on the facts of a given case. The legislature's use of the word "shall" in LSA-R.S. 33:423 either makes the chief of police's recommendation a prerequisite to action by the mayor and board of aldermen or it does not; we believe it does make a recommendation a prerequisite.
This conclusion is supported by the legislative history of the Lawrason Act. Prior to the 1985 revisions to the Lawrason Act, the powers of the mayor and board of aldermen were set forth in LSA-R.S. 33:401 and 402.[7] LSA-R.S. 33:401(A) provided in pertinent part:
The mayor and board of aldermen of every municipality shall have the care, management, and control of the municipality and its property and finances. They shall have power:
* * * * * *

*1227 (30) To provide for municipal officers other than those required by this Part who may be found necessary; to prescribe the duties and fix the compensation of all officers and employees, subject to any applicable civil service law; and to require bonds with sureties for the performance of duties from all officers and employees.
(31) To provide for the removal of officers and discharge of employees for misconduct or neglect of duty, subject to any applicable civil service law.
Furthermore, LSA-R.S. 33:402(4) as amended in 1975 conferred on the mayor and board of aldermen the power:
To establish, regulate, and support night watch and police and define the duties thereof, subject to any applicable civil service law. However, in those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481, which have a chief of police elected by a majority of the qualified voters thereof, appointments of police personnel shall be made only upon the recommendation of the chief of police. Such nominations or recommendations are to be made irregardless (sic) of race, color, or creed. (Emphasis added.)
See 1975 La. Acts, No. 790, § 1. Prior to this amendment, pursuant to LSA-R.S. 33:401(A)(30) and (31), the mayor and board of aldermen were vested with the sole power to hire and fire employees of the police department. Graham v. Marshall, 333 So.2d 707, 708 (La.App. 2nd Cir.1976). The effect of the 1975 amendment was to restrict the plenary power of the mayor and board of aldermen in police employment matters. Graham v. Marshall, 333 So.2d at 709.
Following its amendment also by Act 790 of 1975, LSA-R.S. 33:423, which set forth the duties of the marshal, provided:
The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of R.S. 33:321 through R.S. 33:481 which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel. Such nominations or recommendations are to be made irregardless (sic) of race, color, or creed. (Emphasis added.)
The former provisions of LSA-R.S. 33:401(A)(31) granted the mayor and board of aldermen the power to provide for the removal of officers and discharge of employees for misconduct or neglect of duty. Nothing in LSA-R.S. 33:402 or 33:423, as amended in 1975, restricted the power of the mayor and board of aldermen in this respect. Thus, under these former statutory provisions, the mayor and board of aldermen were vested with the sole power to fire employees unless that power was validly delegated to the chief of police. Graham v. Marshall, 333 So.2d at 708-709, citing Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962).
As previously noted, after the 1985 revisions to the Lawrason Act, the mayor had the power to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. LSA-R.S. 33:404(A)(3). It was not until 1990 that LSA-R.S. 33:423, pertaining to the duties of the chief of police, was amended to coincide with the 1985 changes made to LSA-R.S. 33:404(A)(3). In 1990, LSA-R.S. 33:423 was amended to require an elected chief of police to make recommendations to the mayor and board of aldermen with respect to the promotion, discipline, and dismissal of police personnel, as well as the appointment of police personnel. 1990 La. Acts, No. 568, § 1.
*1228 By these various amendments, it is obvious to this court that the legislature intended to further limit the power that the mayor and board of aldermen had with respect to the hiring and firing of employees of the police department. Accordingly, we view the legislature's use of the word "shall" in LSA-R.S. 33:423 as mandating a recommendation by the chief of police as a prerequisite to action by the mayor and board of aldermen with respect to the termination of police personnel.
While we recognize that, as argued by the mayor and Board, the requirement of the chief of police's involvement in such actions may lead to difficulty in some situations where the administration and the chief of police are at odds concerning such matters, one cannot ignore the clear language of the statute. Any change in the statutory requirement is for the legislature to address, not the courts. Thibodeaux v. Hernandez, 702 So.2d at 1160 (Peters, J., concurring).

Frivolous Appeal
In his answer, Lee contends that the mayor and Board's appeal is frivolous and seeks attorney fees and legal expenses for having to defend the appeal. Damages for frivolous appeals are provided for in LSA-C.C.P. art. 2164. The statute is penal in nature and must be strictly construed. Veron v. Veron, 624 So.2d 1295, 1299 (La.App. 3rd Cir.1993), writ denied, 93-2768 (La.1/7/94), 631 So.2d 453. Since appeals are favored, such penalties should not be granted unless they are clearly due; for example, when there are no serious legal questions, when it is manifest that the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel is not serious in advocating the view of the law which he presents. Salmon v. Hodges, 398 So.2d 548, 549 (La. App. 1st Cir.1979). We believe the mayor and Board's contentions in their brief and in oral argument were brought in good faith. The issues raised were not so frivolous as to warrant damages on appeal, and we cannot say that this appeal was brought solely for the purpose of delay or that the mayor and Board's counsel was not serious in the position he advocates. Consequently, we decline to award damages for frivolous appeal.

Decree
For the foregoing reasons, that portion of the trial court's judgment from which the mayor and Board appeal is affirmed. Costs of this appeal in the amount of $590 are assessed to Mayor Mike Grimmer and the Board of Aldermen of the Town of Walker.
AFFIRMED.
NOTES
[1] Judge Anne L. Simon of the Sixteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Walker is a municipality governed by the Lawrason Act, LSA-R.S. 33:321 et seq.
[3] The town clerk was dismissed pursuant to a voluntary motion to dismiss filed by Lee.
[4] A summary judgment as to fewer than all the claims or parties must be designated as final before an appeal can be taken. LSA-C.C.P. art. 1915(B). When this judgment was signed, the designation of a judgment as final could be made by the parties, as was done in this case, or by the judge. For matters filed on or after January 1, 2000, only the court may make such a designation after an express determination that there is no just reason for delay. 1999 La. Acts, No. 1263, § 1.
[5] LSA-R.S. 33:404 was amended by 1997 La. Acts, No. 836.
[6] LSA-R.S. 33:362 was amended by 1997 La. Acts, No. 411.
[7] LSA-R.S. 33:401 and 402 were repealed by 1985 La. Acts, No. 890, § 2.