PARRO, J.
|2Appellants, George S. May International Company (GSM) and Harnek Chahal, challenge a summary judgment granted in favor of the defendants, SunAlliance Insurance Group[1] and Arrowpoint Capital Corporation f/k/a Royal Indemnity Company (collectively, Royal), finding that Royal had no duty to defend GSM or Chahal in a separate lawsuit filed against them in the 24th Judicial District Court for the Parish of Jefferson and further denying the claims for bad faith damages against Royal filed by GSM and Chahal. For the following reasons, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Commercial Flooring and Mini Blinds, Inc. (Commercial Flooring)[2] entered into a contract with GSM,[3] a national management consulting firm, in which GSM was to provide management services to Commercial Flooring for the purpose of developing an organized plan for management of its company. In accordance with this contract, GSM sent Harnek Chahal and another one of its staff executives to Louisiana to provide management training to the employees and operators of Commercial Flooring, including Julie Ferrara.
As part of the management services GSM was providing, Mr. Chahal was required to interview and evaluate employees of Commercial Flooring regarding their assigned duties and tasks so as to place them in positions that would best utilize their individual abilities, as well as the needs of Commercial Flooring. In an alleged attempt to further that goal, Mr. Chahal requested that Mrs. Ferrara meet with him on a specific Friday evening in his hotel room in order to discuss company business and to have dinner. Mrs. Fer-rara declined to attend this meeting, stating that she was unavailable on that Friday night. Mr. Chahal then contacted *1170 Mrs. Ferrara the next day on her cell laphone and advised her that it was necessary that they meet that evening for counseling on a personal level. Mrs. Ferrara again stated that she was unavailable; however, because Mr. Chahal appeared to become angry at her refusal, she agreed to meet with him on Sunday morning of that weekend in the lobby of his hotel.
Once they met in the lobby, Mr. Chahal attempted to move the interview up to his hotel room, but Mrs. Ferrara declined. Mr. Chahal then suggested that they should start the meeting off with a hug, after which, and without her consent, he grabbed Mrs. Ferrara’s arm and kissed her on the cheek. Mr. Chahal again proposed that they go to his room, but Mrs. Ferrara refused his advances, ended the meeting, and left the hotel. Thereafter, Mr. Chahal allegedly gave a negative evaluation of Mrs. Ferrara to her employer, Commercial Flooring. According to Mrs. Ferrara, this negative evaluation, which was negative solely because of her refusal of Mr. Chahal’s unwanted advances, caused her to be denied a promotion at work.
On April 26, 2004, Mrs. Ferrara and her husband filed suit against GSM, Mr. Cha-hal, and various other defendants, including Royal, which had provided a commercial general liability (CGL) policy to GSM that was in effect at the time of the incident involving Mr. Chahal. That underlying suit, which sought damages for the sexual harassment, battery, and fraudulent acts and misrepresentation allegedly committed by Mr. Chahal, has apparently been resolved and is not before this court; however, in June 2005, Royal denied coverage to GSM and Mr. Chahal and refused to provide them with a defense to that suit. Thereafter, GSM filed suit against Royal, contending that Royal breached its duty to defend GSM in the underlying suit filed by the Ferraras. In addition, GSM contended that Royal breached its fiduciary duty and was in bad faith in denying it a defense. Mr. Chahal eventually intervened in this suit and joined GSM in asserting claims against Royal.
Royal responded by filing a motion for summary judgment, contending that the CGL policy had excluded coverage for the incident at issue and the damages sought by the Ferraras and that, therefore, Royal had not been required to provide GSM and Mr. Chahal a defense to the Ferraras’ lawsuit. After a hearing, the trial court granted LRoyal’s motion for summary judgment and dismissed GSM’s petition, as well as Mr. Chahal’s petition for intervention, with prejudice, with each party to bear its own costs. This appeal by GSM and Mr. Chahal followed.[4]
APPLICABLE LAW
An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. West v. Clarendon Nat’l Ins. Co., 99-1687 (La.App. 1st Cir.7/31/00), 767 So.2d 877, 879. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); *1171 Lee v. Grimmer, 99-2196 (La.App. 1st Cir.12/22/00), 775 So.2d 1223, 1225. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Perry v. City of Bogalusa, 00-2281 (La.App. 1st Cir.12/28/01), 804 So.2d 895, 899.
Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. Doiron v. Louisiana Farm Bureau Mut. Ins. Co., 98-2818 (La.App. 1st Cir.2/18/00), 753 So.2d 357, 362 n. 2. In seeking a declaration of coverage under an insurance policy, Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage. Ho v. State Farm Mut. Auto Ins. Co., 03-0480 (La.App. 3rd Cir.12/31/03), 862 So.2d 1278, 1281, citing Pierce v. Aetna Life and Cas. Ins. Co., 572 So.2d 221, 222 (La.App. 1st Cir.1990). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, |swhen applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002,1010.
Generally, the insurer’s obligation to defend suits against its insured is broader than its obligation to indemnify for damage claims. Henly v. Phillips Abita Lumber Co., 06-1856 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1109. The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the “eight-corners rule,” under which an insurer must look to the “four corners” of the plaintiffs petition and the “four corners” of its policy to determine whether it owes that duty. Id. The insurer’s duty to defend suits brought against its insured is determined by the factual allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless it is clear from the petition that the policy unambiguously excludes coverage. Id.; see also Yount v. Maisano, 627 So.2d 148, 153 (La.1993). Thus, assuming the factual allegations of the petition are true, if there could be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Henly, 971 So.2d at 1109; Prestaae v. Clark, 97-0524 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, 1092, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800. In making this determination, the factual allegations of the petition are to be liberally interpreted in deciding whether they set forth grounds that bring the claim within the scope of the insurer’s duty to defend the suit brought against its insured. Henly, 971 So.2d at 1109; Yount, 627 So.2d at 153; Motorola, Inc. v. Associated Indem. Corp., 02-0716 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 836, writs denied, 04-2314, 2323, 2326, and 2327 (La.l 1/19/04), 888 So.2d 207, 211, and 212.
DISCUSSION
In granting Royal’s motion for summary judgment, the trial court determined that Royal never had any duty to defend or indemnify GSM or Mr. Chahal in the lawsuit filed against them by the Ferraras. The trial court further determined that Royal had “reasonably denied coverage and did not provide a defense for the allegations made in 16[the lawsuit.]” In its *1172 reasons for judgment, the trial court specifically stated:
The exclusion at issue clearly provides that employment-related practices[,] which includes harassment[,] are excluded from coverage. It applies whether the insured may be liable as an employer or in any other capacity. There is no restriction on who is being harassed. It is the nature of the acts[,] not how the actor is related to the victim or the capacity in which the actor is committing the acts that matters.... The court also does not believe that the additional claims of negligence made by the sexual harassment plaintiff against GSM’s employee triggers coverage. This additional claim of tortious behavior all stems from the sexual harassment claim and thus is excluded from coverage.
In this appeal, GSM and Mr. Chahal acknowledge that there was no factual dispute in the underlying cross-motions for summary judgment. Instead, the issue revolved around the legal effect of an Employment-Related Practices Exclusion (ERPE) contained within an endorsement to the CGL policy. This ERPE provided:
A. The following exclusion is added to Paragraph 2., Exclusions of Section 1 Coverage A Bodily Injury And Property Damage Liability:
This insurance does not apply to:
“Bodily injury” to:
(1) A person arising out of any:
(a) Refusal to employ that person;
(b) Termination of that person’s employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of “bodily injury” to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
B. The following exclusion is added to Paragraph 2., Exclusions of Section
1 Coverage B Personal And Advertising Injury Liability:
This insurance does not apply to:
“Personal and advertising injury” to:
(1) A person arising out of any:
|7(a) Refusal to employ that person;
(b) Termination of that person’s employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of “personal and advertising injury” to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else *1173 who must pay damages because of the injury.
(Some emphasis added).
Section V of the insurance policy further defined “bodily injury” as bodily injury, sickness, or disease sustained by a person, including death resulting from these at any time. In addition, “personal and advertising injury” was defined in the policy to mean:
[IJnjury, including consequential “bodily injury”, arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person’s right of privacy;
f. The use of another’s advertising idea in your “advertisement”; or
g. Infringing upon another’s copyright, trade dress or slogan in your “advertisement”.
In addition to the pertinent provisions of the CGL policy, the factual allegations of the Ferraras’ petition are also relevant to a determination of whether Royal owed a duty to defend. According to their original petition, Mr. Chahal was sent to Jefferson Parish to interview and evaluate employees of Commercial Flooring regarding their assigned duties and tasks. The petition further states:

J£-

The purpose of the interviews was to place Commercial Flooring personnel (e.g., Julie Ferrara) in positions that would best utilize their individual abilities and the needs of Commercial Flooring.
8.
On or about Friday May 23, 2003, Mr. Chahal attempted to schedule the interview of petitioner and urged Mrs. Fer-rara to meet with him at his hotel room to discuss “company business” and to have dinner. According to Mr. Chahal, petitioner should meet with him as he instructed in order that a “trust” be established between them. Mrs. Fer-rara told Mr. Chahal that she was not available on Friday night.
9.
On the next day, ... Mr. Chahal called Mrs. Ferrara on her cellular telephone claiming that it was necessary that they meet that evening or night for “counseling on a personal level.” Again, Mrs. Ferrara postponed this meeting[,] citing personal reasons[,] but due to Mr. Chahal’s insistence and apparent anger, she scheduled to meet with him on Sunday morning in the lobby of his hotel.
10.
On or about Sunday May 25, 2003, Julie Ferrara left her husband to meet with Mr. Chahal. After meeting at the hotel, Mrs. Ferrara suggested that they discuss business at a coffeehouse, which suggestion was declined by Chahal. Mr. Chahal implied that he was recommending that Mrs. Ferrara be promoted to Operations Manager[,] but he insisted that further discussions concerning her promotion take place in his hotel room[,] which offer was declined by your petitioner. Ultimately they met in the lob *1174 by of Chahal’s hotel[,] which was located in Jefferson Parish.
11.
Julie Ferrara chose a table and sat with her back to the lobby at which time Mr. Chahal stated, “Let’s start out with a hug.” Subsequently, Mr. Chahal committed a battery on Julie Ferrara when[,] against her wishes, he grabbed her arm and kissed her on the cheek and again suggested that they go to his room. Mrs. Ferrara again refused Mr. Chahal’s advances[,] and after Mr. Cha-hal became very upset and excitable[,] Julie Ferrara ended the meeting and left the hotel.
13.[5]
At all times relevant hereto, Mr. Cha-hal was employed by [GSM] as a Senior Staff Executive and was acting in the course and scope of his employment. Accordingly, [GSM] is answerable for the damage caused by Mr. Chahal. Louisiana Civil Code articles 2815 and 2320.
Mrs. Ferrara later filed a third supplemental and amending petition, in which she alleged:
lf|23.
During the relevant days when [GSM] and Harnek Chahal were performing their services for Commercial Flooring, Harnek Chahal stated to Patrick Rooney (Julie Ferrara’s boss and Commercial Flooring’s Owner) that Ms. Ferrara was incapable of performing as a top manager for his company because Julie was basically “garbage.”
24.
The disparaging and slanderous comments made by Mr. Chahal, on behalf of his employer, were in stark contrast to the earlier statements told to Mr. Rooney by Mr. Chahal where Mr. Chahal had expressed to Mr. Rooney that petitioner was “a diamond in the rough” and was the “star” Commercial Flooring needed.
25.
What Mr. Chahal failed to tell Mr. Rooney [was] that in between his “diamond in the rough” statements^] which were made on a Friday, and the “garbage” statements[,] which were made on the following Monday, Mr. Chahal had attempted to coerce Petitioner into his hotel room under the guise of reviewing a. proposed Commercial Flooring organizational chart. The chart, which Chahal drafted, placed petitioner in a high level management position at Commercial Flooring. During the Sunday meeting at the hotel, Petitioner refused Mr. Cha-hal’s sexual advances and became upset, confused and depressed by the incident.
26.
It is alleged that the slanderous and defamatory comments made by Mr. Chahal to Mr. Rooney on Monday were made during the scope and course of Mr. Chahal’s employment with [GSM;] however, petitioner alleges that the context of Mr. Chahal’s defamatory statements were not employment related because (1) they were made because Julie Ferrara refused Mr. Chahal’s sexual advances, (2) they were an attempt by Chahal to protect his own credibility and job, (3) were made to justify and disguise his inappropriate actions toward petitioner^] which had been witnessed by a co-worker, and (4) they were not based on an evaluation of petitioner.
27.
Plaintiff further avers that the comments made by the [GSM] representative to Mr. Rooney were disparaging, slanderous, libelous and a violation of
*1175 Petitioner’s right to privacy[,] and his words have unexpectedly and unintentionally caused Ms. Ferrara to be humiliated by her family members, her employer, and co-workers and has caused her to sustain severe and personal injuries[,] which are permanent and continuing.
If the allegations of the petition are taken as true, Mr. Chahal clearly assaulted Mrs. Ferrara and committed a battery upon her, while acting in the course and scope of his employment for GSM. Moreover, the petition alleges that Mr. Chahal gave Mrs. Ferrara a negative evaluation in retaliation for her refusal of his unwanted sexual 110advanees during their meeting, which resulted in her failure to obtain a promotion. These allegations, if interpreted liberally, clearly establish some liability on the part of GSM and Mr. Chahal for the damages sustained by the Ferraras.[6] Thus, the only issue remaining to be decided in order to determine whether Royal owed GSM and Mr. Chahal a duty to defend the underlying lawsuit is whether the policy unambiguously excluded coverage for Mr. Chahal’s actions.
An insurance policy is an agreement between the parties and should be construed according to the general rules of interpretation of contracts as set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, 580. When interpreting insurance contracts, the court’s responsibility is to determine the parties’ common intent. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763; see LSA-C.C. art. 2045. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, decree amended, 95-0809 (La.4/18/96), 671 So.2d 915.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. Such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Ledbetter, 665 So.2d at 1169; see LSA-C.C. art. 2047. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter, 665 So.2d at 1169. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume. Campbell v. Market American Ins. Co., 00-1448 (La.App. 1st Cir.9/21/01), 822 So.2d 617, 623, writ denied, 01-2813 (La.1/4/02), 805 So.2d 204. In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. Tunstall v. Stierwald, 01-1765 (La.2/26/02), 809 So.2d 916, 921. However, the insurer bears the burden of proving policy limits or exclusions. Id.
*1176 The appellants’ primary argument on appeal is that Mrs. Ferrara had no past, present, or potential employment relationship with GSM and that, therefore, the ERPE was inapplicable. While Louisiana courts have addressed the general applicability of the ERPE, they have not addressed this specific issue. However, a review of the language of the ERPE demonstrates that it does not limit its applicability to those individuals who have an employment relationship with the insured. Instead, the ERPE applies to “bodily injury” or “personal and advertising injury” to a “person,” but nothing in the ERPE requires that the injured person be an employee of the insured.
The language of the ERPE does require that the injury to the person arise out of:
(1) the refusal to hire the injured person;
(2) the termination of the injured person’s employment; or (3) an “employment-related” activity of the insured directed at the injured person. Obviously, under the facts of this case, only the third category of injury is subject to our review.
In this regard, Mr. Chahal’s alleged actions took place during a meeting that he scheduled for the purpose of discussing “company business.” Part of his assignment for GSM was to interview the employees of Commercial Flooring, including Mrs. Ferrara, in order to determine their strengths and weaknesses, so as to place them in positions that would best utilize their individual abilities, as well as the needs of Commercial Flooring. It was during one such interview that Mr. Chahal allegedly sexually harassed Mrs. Ferrara and committed an assault and battery upon her. Furthermore, it was in his capacity as a representative of GSM, while providing an employment evaluation of Mrs. Ferrara, that Mr. Chahal allegedly defamed Mrs. Ferrara by advising her supervisor that Mrs. Ferrara was “garbage.” Clearly, these actions took place in the context of Mr. Chahal’s employment with GSM and were directed at Mrs. Ferrara. Therefore, there 112can be no dispute that these actions were “employment-related” acts by an employee of the insured that are unambiguously excluded from coverage pursuant to the terms of the ERPE. Moreover, the exclusion to coverage applies “[w]hether the insured may be liable as an employer or in any other capacity.” (Emphasis added). Since GSM was not the employer of Mrs. Ferrara, its liability “in any other capacity” is excluded from coverage. Accordingly, Royal owed GSM and Mr. Chahal no duty to defend them in the lawsuit filed by the Ferraras.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court, which granted summary judgment in favor of SunAlliance Insurance Group and Arrowpoint Capital Corporation f/k/a Royal Indemnity Company and dismissed the petition of George S. May International Company and the petition for intervention filed by Harnek Cha-hal. All costs of this appeal are assessed to appellants, Harnek Chahal and Patrick D. Cavanaugh of High Ridge Partners, as Trustee-Assignee of George S. May International Company.
AFFIRMED.
CARTER, J., concurs.

. SunAlliance Insurance Group was sued in its capacity as the parent company to Arrow-point Capital Corporation f/k/a Royal Indemnity Company. For purposes of this opinion, we will refer to both defendants collectively as Royal.

. Commercial Flooring has its registered agent and principal place of business in Jefferson Parish.

.Since the filing of the petition in this matter, GSM has ceased all business operations and gone into liquidation. Therefore, its claim in this matter is now being pursued by Patrick D. Cavanaugh of High Ridge Partners, as the original trustee-assignee. In this opinion, we will continue to refer to the plaintiff as GSM.

. GSM and Mr. Chahal filed cross-motions for summary judgment, which were denied by the trial court.

. The original petition does not contain a paragraph 12.

. Mr. Ferrara initially sought damages for loss of consortium. He subsequently died before the lawsuit was resolved, and Mrs. Ferrara amended the petition to assert a survival action on behalf of her deceased husband.