870 So.2d 1011 (2004)
Michael GRANT
v.
Mayor George GRACE and City Council of St. Gabriel, La.
No. 2003-C-2021.
Supreme Court of Louisiana.
April 14, 2004.
*1012 L. Phillip Canova, Jr., Louis W. Delahaye, Canova & Delahaye, Plaquemine, for applicant.
Victor J. Woods, Jr., Woods Holloway, for respondent.
TRAYLOR, Justice.
Michael Grant, the plaintiff, was hired as a law enforcement officer for the St. Gabriel Police Department on May 17, 2001, but failed to obtain training and certification within one year as required by La. Rev.Stat. 40:2405(A)(1). Contrary to the recommendation of the Chief of Police, the City Council voted unanimously to terminate Plaintiff's employment.
Plaintiff sought to enjoin the City Council from interfering with or terminating his employment. The trial court granted a Temporary Restraining Order and later granted a Preliminary Injunction. Thereafter, the trial court granted Plaintiff's Motion for Summary Judgment, declaring Plaintiff to be wrongfully terminated and ordering his employment and compensation to be reinstated. The court of appeal affirmed the decisions of the trial court. 2002-2098 (La.App. 1 Cir. 6/27/03), 858 So.2d 542.
We granted writs to determine whether La.Rev.Stat. 33:423, which mandates that a police chief make recommendations with respect to the termination of police personnel, further mandates that the mayor or aldermen must adopt the recommendations of the police chief or if the city may take its own action after considering the police chief's recommendations.

FACTS AND PROCEDURAL HISTORY
Michael Grant, the plaintiff, was hired as a law enforcement officer for the St. Gabriel Police Department on May 17, 2001. On May 23, 2002, the Mayor and City Council, in a public meeting, asked Plaintiff to produce a certificate that he had successfully completed the statutorily required Police Officers Standards and Training Academy (POST). At the meeting, Plaintiff explained that he was unable to obtain his POST certificate. Patrick Nelson, the Chief of Police for St. Gabriel, recommended to the City Council that Plaintiff be placed in an "administrative" position until he successfully completed POST training. The City Council rejected the Police Chief's recommendation and voted unanimously to terminate Plaintiff's employment.
On June 13, 2002, Plaintiff filed a Petition for Damages and sought a Temporary Restraining Order (TRO) prohibiting Mayor George Grace and the City Council of St. Gabriel from interfering and terminating Plaintiff's employment with the Police Department. The trial court signed a Temporary Restraining Order on June 13, 2002 and a hearing on the Preliminary Injunction was scheduled for July 18, 2002. On June 17, 2002, the City filed a Motion Objecting to the Temporary Restraining Order, alleging that Plaintiff failed to demonstrate his efforts to notify the City prior to the filing of the pleading seeking the TRO and also filed its Answer and Discovery request on Plaintiff.
Thereafter, on June 25, 2002, the City of St. Gabriel, through its Mayor and City Council (collectively, the City), adopted its budget for the fiscal year 2002-2003. The 2002-2003 budget reduced appropriations from $515,000 to $449,500 including a reduction of funds allocated for "officers" positions. The funding was reduced from seven to six positions for the 2002-2003 fiscal year.
On June 27, 2002, plaintiff filed a motion reurging the trial court to grant a TRO prohibiting the City from interfering *1013 and/or terminating plaintiff's employment with St. Gabriel. On July 1, 2002, the trial court issued plaintiff a TRO prohibiting the City from interfering with and or terminating his employment. On July 18, 2002, the trial court granted plaintiff's request for the Preliminary Injunction. On August 15, 2002, pursuant to cross Motions for Summary Judgment filed by plaintiff and St. Gabriel, the trial court granted plaintiff's Motion for Summary Judgment, declaring Plaintiff to be wrongfully terminated, reinstating his employment and all compensation, and denying the City's Motion for Summary Judgment. The trial court signed Plaintiff's request for a Writ of Mandamus that the City pay Plaintiff "for all hours worked previously and any in the future."
The City suspensively appealed all three decisions of the trial court. On June 27, 2003, the court of appeal considered the extent to which La.Rev.Stat. 33:423 impedes the authority of the council to deny Plaintiff an administrative position as contemplated under La.Rev.Stat. 40:2405 and affirmed the decisions of the trial court. In so ruling, the court of appeal stated:
"[T]he state legislature has expressly vested the authority and discretion in the chief of police to transfer the peace officer to administrative duties. It has, moreover, divested the council of its authority to terminate a police officer without the prior recommendation of the chief of police. As such, the council exceeded its authority when it ignored the recommendation of the chief of police and unilaterally terminated Grant."
Upon the application of the City, we granted certiorari to review the correctness of that decision. Specifically, we are called to resolve whether La.Rev.Stat. 33:423, which mandates that a police chief make recommendations with respect to the termination of police personnel, further mandates that the mayor or aldermen adopt the recommendations of the police chief or if the city may take its own action after considering the police chief's recommendations as they relate to the peace officer training and certification requirements set forth in La.Rev.Stat. 40:2405.
Plaintiff herein argues that such an officer must be given an administrative position under La.Rev.Stat. 40:2405 until he can complete his certification requirements. Plaintiff further asserts that La. Rev.Stat. 33:423, entitled "Duties of a marshal," clearly states that a municipality cannot terminate law enforcement personnel without the police chief's recommendation.
The City counters that plaintiff's failure to complete certification within one year of his employment was due to his own fault and that he violated the terms of his employment agreement with the City, which thereafter authorized the City to terminate his employment. Moreover, the City submits that La.Rev.Stat. 33:423 does not require a municipality to accept the recommendation of the Chief of Police on discipline, hiring or termination of police department personnel. The City argues that under the last clause of 40:2405, an officer who does not comply with the Certification requirements may serve in an administrative capacity, however, the municipality is not precluded from also terminating such a person.
In determining which party is correct, we analyze both statutes in relation to the situation at hand.

DISCUSSION
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184; Touchard v. *1014 Williams, 617 So.2d 885 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Theriot, 694 So.2d at 186; Touchard, 617 So.2d at 888. Ambiguous text is to be interpreted according to the generally prevailing meaning of the words employed. La. Civ.Code art. 11. Their meaning may be sought by consulting other laws on the same subject matter. Theriot, 694 So.2d at 186; Succession of Baker, 129 La. 74, 55 So. 714 (1911).
As we stated in Theriot,
We have long held that the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute.
One particularly helpful guide in ascertaining the intent of the legislature is the legislative history of the statute in question and related legislation. Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject. We give harmonious effect to all acts on a subject when reasonably possible. (Citations omitted).
Theriot, 694 So.2d at 186. With these principles in mind, our analysis begins with the Certification requirements set forth in La.Rev.Stat. 40:2405.
La.Rev.Stat. 40:2405
At the time Plaintiff was hired as a police officer for the St. Gabriel Police Department, he was subject to the statutory requisites of La.Rev.Stat. 40:2405, which state in pertinent part:
A. (1) Notwithstanding any other provision of law to the contrary, any person who begins employment as a peace officer in Louisiana subsequent to January 1, 1986, must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment. Any person who fails to comply with this requirement shall be prohibited from exercising the authority of a peace officer; however, such persons shall not be prohibited from performing administrative duties. (Emphasis added.)
Because plaintiff did not comply with La.Rev.Stat. 40:2405 within one year of his employment, he was in violation of La.Rev. Stat. 40:2405. As a result, his employment was discussed at a City Council meeting on May 23, 2002, and after hearing the Chief of Police's recommendation, the Council unanimously decided to terminate Plaintiff's employment.
In analyzing the propriety of the City's termination of Plaintiff under La.Rev.Stat. 40:2405, we focus first on the plain wording of the statute. Clearly under La.Rev. Stat. 40:2405, a peace officer must complete a certified training program and pass an examination within one calendar year from the date of initial employment. Indeed, any officer who fails to do so "shall be prohibited from exercising the authority of a peace officer." Id. However, the last clause of Subsection A of La.Rev.Stat. 40:2405 which states, "such persons shall not be prohibited from performing administrative duties," seems less clear.
Because we find some confusion as to the last clause of Subsection A of La.Rev. Stat. 40:2405, we now turn to the legislative history of the Act and the purpose for the statute's enactment. In so doing, we view with particular interest the legislative revisions made to the statue over the *1015 years. The original 1976 version of La. Rev.Stat. 40:2405 read:
A. Every peace officer, not later than one year after accepting employment as a peace officer or within one year after the effective date of this Chapter, whichever is later, shall successfully complete a basic law enforcement training course conducted by a training center accredited by the council....
The 1982 amendment, rewrote the Section as follows:
A. Notwithstanding any other provision of law to the contrary, any person who begins employment as a peace officer in Louisiana subsequent to January 1, 1986, must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment. Failure to comply with this requirement will be grounds for the council to seek an injunction prohibiting such an individual from exercising the authority of a peace officer. (Emphasis added.)
The next amendment under Act 1998, 1st Ex.Sess., No. 108, of the Louisiana Legislature was identical to the 1982 amendment with the exception of a re-designated the text of Subsection A as paragraph A(1) and rewriting of the second sentence as follows (in italics):
A. (1) Notwithstanding any other provision of law to the contrary, any person who begins employment as a peace officer in Louisiana subsequent to January 1, 1986, must successfully complete a certified training program approved by the council and successfully pass a council-approved comprehensive examination within one calendar year from the date of initial employment. Any person who fails to comply with this requirement shall be prohibited from exercising the authority of a peace officer; however, such persons shall not be prohibited from performing administrative duties.

Subsection A(1) has not been changed by subsequent amendments or acts.
The original 1976 version left uncertain what ramifications would occur where a peace officer failed to meet the training and certification requirements of La.Rev. Stat. 40:2405. In an apparent attempt to supply the effects stemming from such an officer's failure, the legislature, in the 1982 amendment, provided the council with the option of seeking an injunction. Act 1998, 1st Ex.Sess., No. 108 added language to clarify that the failure to comply with La. Rev.Stat. 40:2405 would result in a strict prohibition of any person "from exercising the authority of a peace officer." With the 1998 amendment, the legislature no longer required the municipality to seek an injunction, rather it forbade such a person from acting as a peace officer. All parties herein agree as to this interpretation.
That aside, the parties herein do not agree as to meaning or aim of the last clause of Subsection A(1), which reads: "however, such persons shall not be prohibited from performing administrative duties." Plaintiff submits that, considering the language of the Statute, any attempt by the City to control the assignment of the police department's personnel is invalid. This includes, according to plaintiff, the assignment of an officer to administrative duties without approval of the council or mayor.
We disagree. The prohibition in La.Rev.Stat. 40:2405 regarding the ability of a person to exercise the authority of a peace officer and the language which indicates that "such persons shall not be prohibited from performing administrative *1016 duties" refers solely to what capacity the officer may perform certain tasks within law enforcement if he has not met the Certification requirements. In other words, an officer who is not properly certified is not disqualified from administrative positions, but he is also not guaranteed such a position for his failure to qualify. La.Rev.Stat. 40:2405 in no way mandates that an officer who is not properly certified must serve in an administrative position without any recourse available to the municipality or the chief of police for his failure to comply with La.Rev.Stat. 40:2405.
Having determined this issue, we now turn to the more tortuous issue raised under La.Rev.Stat. 33:423.
La.Rev.Stat. 33:423
Plaintiff argues that the La.Rev.Stat. 33:423 "clearly states that a municipality cannot terminate law enforcement personnel whose chief of police is elected without his recommendation." Plaintiff, citing Lee v. Grimmer, 99-2196 (La.App. 1 Cir.2000), 775 So.2d 1223 and Thibodeaux v. Hernandez, 97-602 (La.App. 3 Cir. 10/29/97), 702 So.2d 1157, strains to further assert that the police chief's "approval" of a municipality's termination is necessary for a municipality to act under La.Rev.Stat. 33:423.
These arguments are simply untenable and do not jibe with the overall meaning of the statutes when they are read together. Plainly, under La.Rev.Stat. 33:423, it is mandatory that the chief of police make a recommendation to the mayor or board of aldermen for the "appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel." The word recommendation "refers to an action which is advisory in nature rather than one having any binding effect." BLACK'S LAW DICTIONARY 626 (5th ed.1979).
The court of appeal's determination that the council exceeded its authority when it "ignored the recommendation of the chief of police and unilaterally terminated Grant" was incorrect. We reiterate, a "recommendation" is merely advice which need not be followed. Inherent in the advisory position of any advocate is the option of the receiving party to comply with or reject the recommendation. Furthermore, we note that the recommendation requirement of La.Rev.Stat. 33:423 is a duty of the police chief and, therefore, is burdened upon the police chief, not upon the municipality. Louisiana Rev. Stat. 33:423 no way mandates that the municipality adopt, in whole or in part, the recommendation of the chief of police.
Next, we reject the court of appeal's finding that the City acted unilaterally in terminating Plaintiff. Unilateral action is action taken without regard to the opinions of others, without mutual consideration. The word "unilateral" is defined as, "One-sided; ex parte; having relation to only one of two or more persons or things." BLACK'S LAW DICTIONARY 626 (5th ed.1979). Without a doubt, the City in this case did not act unilaterally. The Council listened to the Chief of Police's opinion as to Plaintiff, took his recommendation under advisement, and, after consideration, decided to not adopt it.
While we find that the police chief is to be allowed to make recommendations before the municipality acts, and indeed must do so under La.Rev.Stat. 33:423, we reject the holdings of Lee v. Grimmer and Thibodeaux v. Hernandez which have provided that the specific recommendation of termination or approval of the police chief is a prerequisite to the municipality's ability to terminate peace officers.[1] This would *1017 mandate that the municipality merely "rubberstamp" all employment decisions made by the police chief and would render the recommendation requirement of La. Rev.Stat. 33:423 useless step to be taken by both the Chief of Police and the municipality.
Under La.Rev.Stat. 33:423, a police chief must make recommendations with respect to any of the employment actions enumerated therein to the municipality. However, the municipality need not adopt such recommendation and may, after the recommendation, take its own action as relates to the peace officer training and certification requirements set forth in La.Rev.Stat. 40:2405.

CONCLUSION
Our interpretation of the two statutes is in harmony with the plain meaning of the statutes and the intent evidenced by the legislature in enacting and amending both statutes. For the foregoing reasons, we reverse the decisions of the lower courts and grant the City's Motion for Summary Judgment.
KIMBALL, J., concurs in the result and assign reasons.
KNOLL, Justice, concurs in the result.
JOHNSON, Justice, concurs.
KIMBALL, Justice, concurring in result.
I concur in the result reached by the majority in this case. The legislature has excepted certain cities, villages, and towns from the "recommendation" procedure provided by La. R.S. 33:423. See La. R.S. 33:423.2-33:423.13. However, these exceptions, which generally provide that the chief of police may act directly with respect to police personnel, do not apply to the town of St. Gabriel.
NOTES
[1] We note that the police chiefs in both Thibodeaux and Lee deliberately chose not to recommend the dismissal of the officers who were later terminated by the respective municipalities.