905 So.2d 444 (2005)
LOUISIANA INSURANCE GUARANTY ASSOCIATION
v.
JOHNSON CONTROLS, INC. and Johnson Controls World Services, Inc.
No. 05-CA-27.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*446 Angela W. Adolph, Stephanie B. Laborde, Baton Rouge, Louisiana, for Plaintiff/Appellee.
John H. Musser, V, Murphy, Rogers & Sloss, New Orleans, Louisiana, Geoffrey A. Bryce, Jennifer B. Cromheecke, Brycedowney, LLC, Chicago, Illinois, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Johnson Controls World Services, Inc. (JCWS), appeals from the trial court judgment granting summary judgment in favor of the Plaintiff, Louisiana Insurance Guaranty Association (LIGA), denying JCWS' summary judgment motion, and ordering JCWS to pay LIGA $25,457.18. For the reasons which follow, we amend and, as amended, affirm.
The facts giving rise to this action are not in dispute. Rebecca Moss (Moss) was injured on January 3, 2000 while in the scope of her employment with JCWS. JCWS had, at the time of the accident, contracted with Reliance National Indemnity Company (Reliance) for Workers' Compensation Liability Insurance coverage. Moss received workers' compensation benefits from Reliance until it went into liquidation on October 3, 2001. Following Reliance's liquidation, on or about December 2, 2001, LIGA assumed responsibility for payments to Moss and began paying her workers' compensation benefits. LIGA made a request of JCWS for reimbursement for the benefits it had paid to Moss on JCWS' behalf. JCWS refused to reimburse LIGA.
On February 21, 2003, LIGA filed suit against JCWS for reimbursement of $25,457.18, the amount claimed for administrative expenses and benefit payments related to Moss' claim. JCWS filed exceptions and an answer to the suit. Thereafter, LIGA filed for a summary judgment arguing that there were no material issues of fact and that, based on La. R.S. 22:1379(3)(f), LIGA was entitled to judgment as a matter of law. JCWS filed a cross motion for summary judgment arguing that it was not liable. Following a hearing on June 24, 2004, the trial court rendered summary judgment in favor of LIGA in the amount of $25,457.18 on August 6, 2004. The trial court denied the cross summary judgment motion of JCWS. It is from this judgment that JCWS appeals.
The appellate standard of review for summary judgment is well settled. Appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512 *447 (La.7/5/94), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327 (La.App 5th Cir. 04/25/00), 761 So.2d 84, writ denied, 00-1453 (La.6/30/00), 766 So.2d 544; Moody v. United Nat. Ins. Co., 98-287 (La.App. 5th Cir.9/29/98), 743 So.2d 680. Thus, this Court must consider whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith, supra; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.
On appeal JCWS presents seven arguments for review. The first four arguments pertain to the statutory interpretation of the two statutes applicable to LIGA's claim and the effect of an amendment to those statutes.
LIGA relied on La. R.S. 22:1379(3)(f), in effect at the time the payments were made and suit was filed, in support of its position that JCWS owed it reimbursement for the funds it paid to Moss. That statute provided in part:
§ 1379 Definitions
As used in this Part:
(3)(f) "Covered claim" shall not include any claim by any insured whose net worth exceeds twenty-five million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insurer.
It was not disputed that JCWS' net worth exceeded 25 million dollars on the designated date. LIGA's position is that the claim it paid was not covered and therefore not owed by LIGA. Since LIGA paid a claim on behalf of JCWS that it was not legally required to pay, LIGA argues that it is legally entitled to obtain reimbursement from JCWS, on whose behalf the claim was paid.
JCWS relies on the companion provision, La. R.S. 22:1382(D), in effect at the time the payments were made and the suit was filed, in support of its position that it does not owe reimbursement to LIGA. La. R.S. 22:1382(D) provided in pertinent part:
§ 1382. Powers and duties of the association
(D). The association shall have the right to recover from an insured any covered claim paid on behalf of the insured whose net worth exceeds twenty-five million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insured.
JCWS argues that this is the provision that authorizes LIGA to seek reimbursement of paid claims and the payments made in this case do not come within the terms of the provision. More particularly, under the strict language of the statute, the claim paid by LIGA does not come within it terms because: (1) by definition, La. R.S. 22:1379(3)(f), it was not a "covered claim;" (2) the claim was not paid on behalf of JCWS; and (3) the "insured" has not been determined to be insolvent.
Well settled guidelines of statutory construction dictate our manner of review in this case. These principles were most recently reiterated by the Supreme Court in Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 836, as follows:
"Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent." La.Code Civ. art. 2; Detillier v. Kenner Regional Medical Center, XXXX-XXXX p. 3 (La.7/6/04), 877 So.2d 100, 103; Grant v. Grace, 2003-2021 p. 4 (La.4/14/04), 870 So.2d 1011, 1014; Sultana Corp. v. Jewelers Mut. Ins. Co., XXXX-XXXX p. 3 (La.12/3/03), 860 So.2d 1112, 1115. The interpretation of a statute starts with the language of the statute itself. *448 Grant, 2003-2021 p. 4, 870 So.2d at 1014. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La.Code Civ. art. 9; Detillier, XXXX-XXXX p. 4, 877 So.2d at 103.
The laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. La.Code Civ. art. 13; Detillier, XXXX-XXXX p. 4, 877 So.2d at 103. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter. Detillier, XXXX-XXXX p. 8, 877 So.2d at 106; Grant, 2003-2021 p. 5, 870 So.2d at 1014, citing Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. "Under our long-standing rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter." Hollingsworth v. City of Minden, 2001-2658 p. 4, 828 So.2d 514, 517; Grant, 2003-2021 p. 5, 870 So.2d at 1014, citing Theriot, 95-2895, 694 So.2d at 186.
A statute must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it." Sultana Corp., XXXX-XXXX p. 4, 860 So.2d at 1116. In addition, "courts are bound to give effect to all parts of a statute and cannot give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." Hollingsworth, 2001-2658 p. 5, 828 So.2d at 517; Sultana Corp., 2003, 0360 p. 4, 860 So.2d at 1116.
Applying these precepts to the statutory interpretation required of us in this case, we find that La. R.S. 22:1382(D) is anything but clear and unambiguous. First, it appears that the last word in the statute, "insured," is a typographical error, and was meant to be "insurer" since it makes no sense as written and was presumably intended to track the language of its companion provision, La. R.S. 22:1379(3)(f). Furthermore, as written, providing reimbursement rights for "covered" claims paid by LIGA "on behalf of the insured whose net worth exceeds twenty-five million dollars" and considered along with the companion provision, La. R.S. 22:1379(3)(f), there would be no claims for which LIGA could be reimbursed because, under 1379(3)(f), there are no "covered" claims when the insured's net worth exceeds 25 million dollars.
Thus, since the provision is not clear and unambiguous and the application of it in a strict manner as written would render it meaningless, under our long-standing rules of statutory construction, we have a duty in the interpretation of the statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter and to apply and interpret it in a manner that is logical and consistent with the presumed fair purpose and intention of the legislature in enacting it. In looking to the intent of the legislature in enacting the provisions, we find that the intent was to allow LIGA to recover the sums it paid on claims that should have been paid by an insurer that became insolvent, where the company insured by the insolvent insurer had a net worth exceeding 25 million dollars at the end of the year preceding the insolvency determination.
First, we note that both La. R.S. 22:1379(3)(f)and La. R.S. 22:1382(D) were *449 enacted together in Act No. 475 of 1999 along with La. R.S. 22:1382(A)(3)(f) to provide a comprehensive package allowing LIGA to recover for claims it paid on behalf of companies that have over a 25 million dollar net worth and, in turn, not subjecting the premiums paid by those companies to assessment by LIGA. Further, we found that the introduction to the Act stated in part that the provisions were being enacted relative to LIGA "to provide for recovery of paid covered claims." We also found that the language used in the last clause of the first sentence of La. R.S. 22:1379(3)(f) and 22:1382(D) was identical, "whose net worth exceeds twenty-five million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insurer," with the exception of the last word in 1382(D) being "insured" rather than "insurer." Finally, we found that in the 2004 amendment to the two provisions, La. R.S. 22:1379(3)(f) and 22:1382(D), by Act No. 109, the only changes pertinent to the issues herein were to change the word "insured" in 1382(D) to "insurer" and, essentially to remove the word "covered" in the 22:1382(D) in reference to which claims LIGA could seek reimbursement.[1]
Based on the foregoing and our mandate to apply and interpret the statutes in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it and to give effect to all parts of a statute rather than rendering it meaningless, we find that the legislature intended for LIGA to be able to seek recovery from an insured (JCWS) for any claim it paid on behalf of the insured (JCWS) whose net worth exceeds 25 million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insurer (Reliance). To hold otherwise would render La. R.S. 22:1382(D) meaningless and thwart the purpose of the statute, to avoid financial loss to the claimant because of the insolvency of an insurer. La. R.S. 22:1376.[2] Moreover, we find that, to the extent it is relevant to the issue presented in this case, Act 109 of 2004, amending La. R.S. 22:1382(D), correcting a typographical error by replacing the last letter of the word insured with an "r" thereby changing the word to "insurer", as was clearly intended, and deleting the word "covered" in reference to what claims LIGA could seek reimbursement, the amendment was interpretive or curative and as such could be applied to this case. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724; Adams v. City of Baton Rouge, 95-2515 (La.App. 1st Cir.4/30/96), 673 So.2d 624. Thus, we find that LIGA is entitled to reimbursement from JCWS for the payments it made on Moss' claim under both the prior law and Act 109 of 2004.
*450 JCWS also argues that LIGA is not due reimbursement under La. R.S. 22:1382(D) because it did not make the payment to Moss "on behalf of" JCWS. We find no merit in this argument. Moss was an employee of JCWS when she was injured in the course and scope of her employment. While it is true that JCWS contracted with Reliance to cover its workers' compensation liability, as determined by the trial judge, that did not absolve it of its liability to its injured worker. La. R.S. 23:1031. Moreover, payments, made by LIGA for a claim that ultimately was found to be not covered, were paid on behalf of the obligor JCWS.
Next, JCWS argues that the trial court erred in finding that service of its cross motion for summary judgment, asserting that La. R.S. 22:1382(D) is unconstitutional because it discriminates as to wealth, was not requested or made on the attorney general. Further, JCWS argues that the argument should have been considered and sustained.
Upon review of the record, we find that the trial court did indeed err in its finding that the attorney general had not been served with the cross motion, presenting the arguments on the unconstitutionality of the statute. However, we further find that the trial court nevertheless considered the argument and rejected it and we find no error in the trial court ruling in this regard.
A distinction made on economic factors does not involve a suspect classification. Consequently, the statute is presumed constitutional and only requires that there exist a rational relationship between the classification and the legitimate purpose of the legislation. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); State v. Fleury, 01-0871 (La.10/16/01), 799 So.2d 468. The burden is on the party challenging the statute's constitutionality to prove that it does not further any appropriate or legitimate state interest. State v. Fleury, supra. LIGA submits that JCWS did not meet its burden in this case. We agree.
The basis for the net worth exception is documented. LIGA was created to provide relief and reliability to claimants and insureds who would not have any other method of recovery if an insurer went insolvent. Over the years, a large amount of LIGA's funds were expended on behalf of large commercial insureds. Net worth exclusions were enacted in an effort to redirect available resources away from entities with a high net worth in favor of individuals who would not otherwise be covered and for whom it was intended. Thus, the legislature determined that insureds with a net worth over 25 million dollars were in a better position to bear the loss of an insolvent insurer than was an insured worth less money for whom LIGA funds would be available. The trial court found that the 25 million dollar economic classification is rationally related to the legitimate state interest that includes making LIGA's limited funds available to the maximum number of covered claimants and to those who would otherwise have no remedy. We agree with the trial court on this determination and find no merit in JCWS' argument that the provision, La. R.S. 22:1382(D), is unconstitutional.
Finally JCWS argues that the trial court erred in awarding LIGA an amount for its administrative costs in paying Moss' claim because entitlement to such costs was added by the 2004 amendment and as such was a substantive change that should not be given retroactive effect. We agree.
The statutory scheme, La. R.S. 22:1379(3)(f) and La. R.S. 22:1382(D), in effect at the time that LIGA paid Moss' claim did not expressly provide for recovery *451 of administrative costs expended by LIGA in the payment of a "claim" for which it could seek reimbursement. While such costs and attorney fees are now recoverable under the 2004 amendment, these changes are substantive and cannot be given retroactive effect. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. Since the trial court expressly recognized this as to the attorney fees, we can only conclude that oversight prompted the award in the judgment for reimbursement to LIGA by JCWS of administrative costs that LIGA expended on the Moss claim. We note that LIGA did not present a contrary argument. Moreover, review of the record indicates that proof of such administrative costs was lacking. Thus, the trial court judgment will be amended to delete this award.
Based on the reasons expressed above, the judgment of the trial court will be amended to delete the award to LIGA for reimbursement of administrative costs expended on the payment of the Moss claim and, in all other respects, the judgment is affirmed. Costs of appeal are to be borne by each party.
JUDGMENT AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] As provided in Act No. 109 of 2004, words in struck through type or deletions from existing law, and words underscored are additions, La. R.S. 22:1382(D) was amended in pertinent part as follows: "D. The association shall have the right to recover from an insured any covered claim paid on behalf of the In the event that the association pays a claim on behalf of an insured whose net worth exceeds twenty-five million dollars on December thirty-first of the year immediately preceding the date of the determination of the insolvency of the insured insurer, the association shall have the right to recover from the insured all costs incurred in the defense of said claim, including attorney fees, administrative costs, court costs indemnity, settlement, or other defense costs.
[2] LIGA pointed out that it commenced paying Moss' claim following Reliance's insolvency so that she would not sustain a loss while the net worth or coverage of JCWS was determined. If LIGA could not recover for the payments it made pending a determination of coverage, it would defeat the purpose of the act.