Dear Chief Bratton:
This office is in receipt of your opinion request wherein you asked the following:
 1) What course of action should the police department take if the mayor refuses to hold mayor's court, and also directly and indirectly blocks the police chief's attempts to send tickets to the 37th
Judicial District Court for prosecution?
 2) Does the mayor have the authority to tell traffic offenders that they do not have to pay their tickets, even though no type of court proceeding has been followed?
 3) What is the police personnel's liability from issuing tickets to offenders, who, in turn, have no avenue to contest the ticket, due to lack of mayor's court?
 4) Can the town council enact an ordinance requiring the police chief to be at monthly town meetings regardless of whether other responsibilities of the chief are delayed?
 5) Can the town council limit, by ordinance, the police chief's use of his patrol vehicle to misdemeanor pursuits for 3 miles outside the village limits, felony pursuits, and requests for assistance from other agencies? The particular ordinance prohibits the use of the vehicle to take prisoners out of town to the parish jail, as the village has no facility, to attend court proceedings, for vehicle *Page 2 
maintenance and for many other uses that require the unit to be taken out of town.
 6) Can the town council take the chief to court to force him to fire an unpaid, commissioned reserve officer, who was hired by the council at the chief's recommendation, simply because the chief changed the officer's duties to include citing traffic offenders and arresting offenders after he completed the POST academy (for another agency)?
 7) Can the mayor open and inspect mail sent to the police chief/police department against the chief's wishes due to the sensitive nature of some correspondence (ex: crime lab reports)?
 8) Does the village have any type of recourse against council members that do not come to the monthly scheduled meetings, having attended only 4 in the last year?
 9) Is it legal for the council to award a construction contract to a friend of a council member, who at the time of awarding the contract had employed the same person to do work on her residence, without requesting bids? The contract was awarded and costs $11,000, while a local competitor was not contacted until after construction was complete and gave a bid of $3,500.
 10)Can a council member vote to hire a company for dirt work, when the council member is in a personal business contract with the owner of the company, as she leases a convenience store from dirt mover owner?
 11)Can a council member vote to hire a family friend to move town property, and the person hired to use town equipment and town trustee inmates to do the labor?
To more efficiently and accurately answer your questions, the responses will be numbered according to the questions listed above.
Question 1:
As a village under the Lawrason Act, the Village of Grayson is subject to La. R.S. 33:321, et seq., in addition to the Louisiana constitution and laws of the state. Under La. R.S. 33:362, the mayor is the "chief executive officer of the municipality." As chief executive officer of the state of Louisiana, the Governor of Louisiana must "faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed." La. Const. Art. 4, § 5. By analogy, the mayor of the Village of Grayson, as chief executive officer, must also "faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed." See supra. (See also La. R.S. 33:404, under which the mayor's duties include "perform[ing] any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.")
Both the federal and state constitution provide that "no person shall be deprived of life, liberty, or property, except by due process of law." U.S. Const., Amendment XIV; La. Const. Art.1, § 2. Moreover, "all courts shall be open, and every person shall have an *Page 3 
adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La. Const. Art. 1, § 22. The right to due process is further extended to the right to judicial review; in particular, "no person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. Art. 1, § 19.
The mayor has a duty to faithfully support and execute the laws of Louisiana and the Louisiana Constitution. As stated above, the constitution requires all courts to be open and confers upon each citizen the right to due process. If the offenders are still being punished or required to pay for their tickets and the mayor is refusing to hold mayor's court and directly and/or indirectly obstructing access to the district courts, it may be a denial of the right to due process, which is violation of the Louisiana Constitution and a violation of the mayor's duties as chief executive officer. However, if the traffic offenders are not being punished or required to pay the traffic ticket, there is likely no denial of their right to due process.
Furthermore, the mayor's court only has jurisdiction over violations of municipal ordinances. La. R.S. 33:441. Thus, if a violator is arrested or cited for a violation of any state statute, the charges must be referred to the district court. If this is not done, the district attorney may be informed of the mayor's inaction.
Question 2:
La. R.S. 33:441, does allow the mayor to "suspend the execution in whole or in part of a fine or imprisonment, or both, imposed for a violation of municipal ordinances". Consequently, the mayor does have the authority to relieve the traffic offender of paying the fine.
Question 3:
There are three branches of the Louisiana State government, the legislative, judicial and executive branch. La. Const. Art. 1, §3. The police department is part executive branch, whereas the mayor in his capacity as judge in the mayor's court is part of the judicial branch. The duties and responsibilities of chief of police under the Lawrason Act includes only "the general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws." La. R.S. 33:423. The chief of police is responsible for delegating these duties and responsibilities to the police personnel. Such duties include issuing traffic citations.
La. Const. Art. 2, § 2, provides, "except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Under this separation of powers doctrine, *Page 4 
neither the chief of police nor his personnel is responsible for exercising the powers of the judiciary. As a result, the police personnel will not be assessed any fault for writing traffic tickets despite the lack of any court proceedings through which the offender may contest the ticket.
Question 4:
"The legislative powers of a municipality shall be vested in and exercised by the board of aldermen . . . The board of aldermen may [e]nact ordinances and enforce the same by fine not to exceed five hundred dollars or imprisonment not exceeding sixty days, or both." La. R.S. 33:362. All laws enacted by the board of aldermen must be by ordinance. La. R.S. 33:406. The board of aldermen must follow La. R.S. 33:406, which outlines the procedure for the enactment of ordinances. A proposed ordinance must be introduced at an aldermen board meeting. Id. Following the introduction of the proposed ordinance, the following must occur:
 The title of a proposed ordinance, except those specifically authorized by R.S. 33:405(D), shall be published once in the municipality's official journal. The notice shall indicated the time and place where the board will consider its adoption. No ordinance, except one authorized by R.S. 33:405(D), shall be adopted until a public hearing on it has been held. No ordinance, except one authorized by R.S. 33:405(D), can be adopted at the meeting at which it is introduced.
La. R.S. 33:406(B)(2).
Nonetheless, La. R.S. 33:405(D) allows for the board of aldermen, in cases of extraordinary emergency, to adopt ordinances at an emergency meeting that has not previously been introduced. In this exceptional case, a two-thirds vote is required for the passage of the proposed ordinance. Id. An emergency ordinance can only be in force for sixty days, notwithstanding a provision in the ordinance stating otherwise.Id.
Accordingly, pursuant to the above cited statutes, the town council has the power and authority to enact an ordinance such as, requiring the chief of police to be at monthly town meetings. However, La. R.S. 33:406 does provide a safety valve. Prior to passage, there is a town meeting where any objections to the ordinance should be raised and addressed.
With respect to an ordinance enacted pursuant to La. R.S.33:405 in case of extraordinary emergency, there is no public meeting safety valve; nevertheless, the ordinance is only in force for a short period.
If the ordinance is passed and the police chief does not appear at the town meeting, he may face whatever fine or imprisonment is imposed by the ordinance. In addition, the *Page 5 
police chief may face charges of malfeasance in office under La. R.S. 14:134, which states the following:
 Malfeasance in office is committed when any public officer or public employee shall:
 (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
 (2) Intentionally perform any such duty in an unlawful manner; or
 (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
 Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
Question 5:
The chief of police has a "general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required by him by ordinance." La. R.S. 33:423(A).
As discussed in question four above, the board of aldermen has the authority to enact ordinances according to the procedure laid out in the Lawrason Act. La. R.S. 33:321 et seq. If the ordinance is proposed and passed in accordance with such procedures, the chief of police must, as part of his duties and responsibilities, enforce and "perform all other duties as required of him by ordinance." Id.
Therefore, the town council has the power and authority to enact an ordinance such as, limiting the police chief's use of his patrol vehicle. However, La. R.S. 33:406 does provide a safety valve. Prior to passage, there is a town meeting where any objections to the ordinance should be raised and addressed. *Page 6 
If the ordinance is passed and the police chief does not appear at the town meeting, he may face whatever fine or imprisonment is imposed by the ordinance. In addition, the police chief may face charges of malfeasance in office under La. R.S. 14:134, which states the following:
 Malfeasance in office is committed when any public officer or public employee shall:
 (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
 (2) Intentionally perform any such duty in an unlawful manner; or
 (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
 Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
Question 6:
Pursuant to La. R.S. 33:362(A)(3) the board of aldermen, "subject to law. . . . and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." Hence, the board of aldermen establishes the policies and procedures regulating the employment of municipal employees to which the mayor and chief of police must abide. The mayor does not have the power to appoint or remove the employees of a police department with an elected chief of police. La. R.S.33:404(A)(3). "In those municipalities governed by the provisions of this Part, which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel." La. R.S. 33:423(A).
Accordingly, the chief of police can make a recommendation not to dismiss an unpaid commissioned reserve officer. Nonetheless, the Supreme Court of Louisiana in Grant *Page 7 v. Grace, 03-2021 (La. 4/14/04), 870 So.2d 1011, held that a city council was authorized to terminate the employment of an unqualified police officer despite a contrary recommendation by the chief of police. Under La. R.S. 33:423, the chief of police must make recommendations to the mayor or board of aldermen; however, "a `recommendation' is merely advice which need not be followed." Id. at 1016. La. R.S. 33:423 creates a duty on the chief of police, not upon the board of aldermen. "La. R.S. 33:423
in no way mandates that the municipality adopt, in whole or in part, the recommendation of the chief of police." Id. at 1016. As such, Grant overruled the holdings in Lee v. Grimmer,
99-2196 (La.App. 1 Cir. 2000) 775 So.2d 1223, and Thibodeaux v.Hernandez, 97-602 (La.App. 3d Cir. 10/29/97) 702 So.2d 1157, which provided for the specific recommendation of termination or approval of the chief of police as a prerequisite to the board's ability to terminate peace officers. Id. at 1017.
On the contrary, if the police department does not have an elected chief of police, the mayor has the authority to appoint or remove such municipal employees. La. R.S. 33:404(A)(3). However, this still must be done subject to the applicable state law, ordinances and civil service rules and regulations.
Question 7:
While the mayor is the chief executive officer over the municipality under the Lawrason Act, he does not have authority over a police department with an elected chief of police. In each section of Title 33 where the mayor's powers are discussed, they do not extend over the police department with an elected chief of police. His powers are likely separate from those of the police chief. For instance, the mayor has the power "to supervise and direct the administration and operation of all municipal offices and agencies, other than a police department with an electedchief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law." La. R.S. 33:404(A)(1). Moreover, the mayor also does not have the power to appoint or remove a municipal employee of a police department with an elected chief of police. La. R.S.33:404(A)(3).
Consequently, since the mayor does not have the power "to supervise and direct the administration and operation" of a police department with an elected chief of police, he likely does not have the authority to open and inspect mail sent to the police chief and/or police department. La. R.S. 33:404(A)(1). To do such may be an encroachment upon the police chief's powers.
On the other hand, if the police department does not have an elected chief of police, the mayor does have supervisory authority under La. R.S. 33:404(A)(1) and can likely open and inspect mail sent to the police chief and/or police department. However, opening and inspecting such mail may have a practical effect upon any evidentiary value it may maintain. *Page 8 
 Question 8-11:
In regard to the remaining questions, inasmuch as they do not relate to the duties and functions of the police department, this office must decline to render an opinion on them.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: _________________________
 ARTHUR SCHAFER
 ASSISTANT ATTORNEY GENERAL