Dear Mr. Jones:
As attorney for the Town of Pollock (the Town), you submit the following questions to this office for our review and resolution.
I. Must the elected Chief of Police of the Town of Pollock request theapproval of the Mayor and/or Town Council in order to hire policedepartment employees?
Because your first question concerns the hiring of police department personnel, we would point out that Town police officers are not afforded the protection of the civil service laws because the Town of Pollock does not meet the population requirements for the establishment of civil service. See La.R.S. 33:2531, et seq.[1]
The Town of Pollock is a Lawrason Act municipality, governed by the provisions of La.R.S. 33:321, et seq. In a Lawrason Act municipality, the authority to hire and fire police personnel is vested in the mayor and the board of aldermen, under La.R.S. 33:362(A)(3), which provides "subject to law . . . and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." "Municipal employees" includes police department personnel, and all employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel." See La. Atty. Gen. Ops. 00-113 and 99-48. *Page 2 
The hiring and firing of police personnel remains within the authority of the municipal governing body, despite the language of La.R.S. 33:423, which provides than an elected chief of police "shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel."
The recommendation requirement of La.R.S. 33:423, and whether or not a local governing body could proceed to hire or fire police officers without the approval of an elected chief of police, was resolved by the Louisiana Supreme Court in Grant vs. Grace, 2003-2021, 870 So.2d 1011
(La. 4/14/2004). In Grant, the Court determined that "a `recommendation' is merely advice which need not be followed," and further advised that the recommendation requirement of La.R.S. 33:423 "is a duty of the police chief and, therefore, is burdened upon the police chief, not upon the municipality. La.R.S. 33:423 in no way mandates that the municipality adopt, in whole or in part, the recommendation of the chief of police." See Grant, 870 So.2d at 1016.
The Court in Grant specifically overruled the holdings in Thibodeauxv. Hernandez, 97-602, 702 So.2d 1157 (La. App. 3rd Cir. 10/29/1997) andLee v. Grimmer, 1999-2196, 775 So.2d 1223 (La. App. 1st Cir. 12/22/2000); these cases had required the specific recommendation of termination by the chief of police as a prerequisite to the board's ability to terminate police officers. Grant, 870 So.2d at 1017.
The Court in Grant confirmed that prior to making police employment decisions, "the police chief is to be allowed to make recommendations before the municipality acts." Grant, 870 So.2d at 1016. However, the Court rejected the argument that the "specific recommendation of termination or approval of the police chief is a prerequisite to the municipality's ability to terminate peace officers." Id. at 1017. The Court went on to explain that "the municipality need not adopt such recommendation and may, after the recommendation, take its own action . . ." Id. at 1017.
Based upon the ruling of the Louisiana Supreme Court in Grant, we advise that in the Town of Pollock, the mayor and the board of aldermen have the sole authority to hire and fire police department employees. While the Town's Chief of Police can recommend individuals for hiring or firing, under the Grant decision, his recommendation can be rejected by the Town governing body.
Note that the legislature has enacted laws exempting certain cities, villages, and towns from the "recommendation" procedure provided by La.R.S. 33:423. These laws, which generally provide that the chief of police may appoint, discipline, and discharge police personnel (subject to the budgetary limitations of *Page 3 
the mayor and the board of aldermen), do not apply to the Town of Pollock, although a similar law applicable to the Town could be enacted by the legislature.[2]
II. Should "cash money" seized during a criminal investigation be kept inthe Town's safe or in a secured police department evidence room in thepolice department?
An elected chief of police in a Lawrason Act municipality ". . . shall have general responsibility for law enforcement in the municipality . . ." See La.R.S. 33:423(A).
In the case of Lentini v. City of New Orleans, 252 La. 413, 417 (La. 1968), the Supreme Court stated "because of the nature of his office, however, he is the chief law enforcement officer of the City and, as such, has supervision of the police department." Further, in the case ofCogswell v. Town of Logansport, 321 So.2d 774 (La. App. 2nd Cir. 1975), a state appellate court interpreted La.R.S. 33:423 the phrase "general responsibility for law enforcement" granted the chief of police by Section 423 to mean "the power to supervise the operation of the police department and assign its personnel and equipment . . ." Id. at 779.
Because an elected chief of police has "the power to supervise the operation of the police department and assign its personnel and equipment," it is the opinion of this office that the Town's elected chief of police is authorized to establish operational procedures for securing evidence. He has final authority over those decisions regarding the secure storage of "cash money" seized during the course of a criminal investigation, and he may require such evidence to be stored in the evidence room at the police department. This determination is consistent with previous opinions of this office interpreting La.R.S. 33:423 to grant an elected chief of police the authority to establish rules and regulations for the operation of the department. See La. Atty. Gen. Ops. 92-306, 88-115, and 87-194.
We note here that in La. Atty. Gen. Op. 09-0156, this office concluded that funds seized in connection with criminal investigations and prosecutions which were stored in New Orleans Police Department evidence and property rooms did not fall under the definition of "public funds" provided in La.R.S. 24:523, and for this reason the misappropriation of such funds was not subject to the additional *Page 4 
reporting requirements of that statute vis-à-vis the Legislative Auditor's Office. However, this office further acknowledged in Opinion 09-0106 that the Legislative Auditor "nevertheless retains the authority to examine, audit, or review the books of the NOPD and make necessary and appropriate findings related thereto . . ." In this vein, our research reflects that the Legislative Auditor's website[3] contains the following "Best Practices" guidelines concerning evidence rooms:
EVIDENCE ROOMS
Failure of a police department to maintain control over confiscated weapons, drugs, money, and other items relevant to criminal cases increases the risk that these items will be stolen, lost, or disposed of improperly. Items such as guns and drugs could be easily converted to cash. The following are some suggestions for proper controls for an evidence room:
• Adopt formal policies and procedures for recording, maintaining, inventorying, and disposing of confiscated items.
• Limit access to the evidence room to authorized personnel only.
• Maintain a log that provides the name, date, time, and reason for entering the evidence room.
• Install a motion security camera in the evidence room that is impervious to power outages.
• Install two locks on the evidence room door which requires two individuals with two separate keys to enter.
• Store evidence by category. For example, have areas of the evidence room allotted for guns, knives, drugs, money, rape kits, and other items as deemed appropriate. This setup will make it easier to take a physical inventory of the evidence room.
• Maintain current inventory records that include the date confiscated, tag number, description of the item, name of the individual from whom confiscated, reference to the arrest report, and final disposition. Consider using a bar code inventory system (computerized system for tracking and accessing evidence). If manual inventory records are maintained, store the records in a fireproof/locked filing cabinet with access limited to only authorized personnel.
• Conduct a physical inventory of the evidence room periodically (certain types of inventory should be inventoried more frequently than others, e.g., money). *Page 5 
• Perform unannounced inspections of the evidence room and inventory records by police officers independent (have no responsibilities for evidence or the evidence room) of the evidence room.
• Use translucent tear-resistant plastic bags instead of manila evidence envelopes so that evidence can be seen.
• Maintain documentation of the final disposition of evidence. If evidence is released, a completed property release form should be maintained. If evidence is destroyed, the documentation should, at a minimum, include (1) a destruction order appropriately signed by the magistrate/district attorney and (2) a document from the law enforcement agency that destroyed the evidence to include the date, location, items destroyed, and signature of the persons destroying and witnessing the destruction (the municipality's police officers should be prohibited from destroying evidence).
The Town's chief of police may wish to contact the Legislative Auditor's office for further insight regarding proper procedures relative to police department evidence rooms.
III. When a citizen has a complaint concerning the "personal" conduct ofan elected official, who is the proper agency to receive such acomplaint?
Complaints concerning alleged criminal conduct should be reported to the District Attorney's Office. Ethical complaints must be submitted to the Louisiana State Board of Ethics for review and resolution. The Board renders advisory opinions regarding the Louisiana Code of Governmental Ethics, La.R.S. 42:1111, et seq. The mailing address for the Board of Ethics is P.O. Box 4368, Baton Rouge, Louisiana 70821, phone 225-219-5600.
We hope the foregoing is helpful to you. Should you have other questions with which we may provide assistance, please contact this office.
Very truly yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:arg
[1] The Town of Pollock has a population of 376 residents according to the United States Census for 2000, below the minimum 7,000 required by La.R.S. 33:2531 to establish civil service. See U.S. Census Bureau website, http://www.census.gov.
[2] See La.R.S. 33:423.2 (City of Harahan); La.R.S. 33:423.3
(City of Gretna); La.R.S. 33:423.4 (City of Ville Platte); La.R.S. 33:423.5
(City of Scott); La.R.S. 33:423.6 (City of Westwego); La.R.S. 33:423.7
(City of Patterson); La.R.S. 33:423.8 (City of Gonzales); La.R.S. 33:423.9
(City of Crowley); La.R.S. 33:423.10 (Village of Tickfaw); La.R.S. 33:423.12
(Town of Iowa); La.R.S. 33:423.13 (Town of Grand Isle); La.R.S. 33:423.15
(City of Broussard); La.R.S. 33:423.16 (City of Carencro); La.R.S.33:423.17 (City of Amite); La.R.S. 33;423.18 (Town of Livingston); La.R.S. 33:423.19 (City of Ponchatoula).
[3] The Louisiana Legislative Auditor's website is www.lla.state.la.us.