MOORE, J.
_|_1The Town of Jonesboro appeals a judgment finding that its mayor improperly removed its fire chief, David Roberts, by failing to obtain the formal approval of the board of aldermen before appointing the new fire chief,[1] and awarding Roberts damages of $36,639.93 in spite of a release executed by the parties. We reverse and render.

Factual and Procedural Background

Roberts had been Jonesboro’s fire chief for several years. In January 2007, the newly elected mayor, Leslie Thompson, got the board of aldermen to name Rob *1047 erts formally to the post, which paid $31,000 a year. In 2011, however, when Mayor Thompson was reelected, he decided to appoint a new fire chief. The mayor so advised Roberts by letter of January 10, 2011.
At the board meeting on January 11, the mayor asked the board to appoint someone else, Treadway, as fire chief. A board member made a motion to that effect, and it was seconded and approved unanimously. The minutes show, however, and the town clerk confirmed, that the board never took any formal action to remove Roberts. Both the mayor and the clerk testified that they considered Roberts officially removed as soon as Treadway was approved, as the town has only one fire chief. Roberts admitted that after January 11, he provided no more services as fire chief.
In early February, Roberts’s lawyer made a demand on the town under the Payment of Employees law, La. R.S. 23:631 et seq., for 160 hours of unused vacation time, 1,324.5 hours of paid leave (“K-time”) and 30 days of penalty wages, a total of $24,953.52, plus attorney fees of $8,309.52, for | ¡¡a total of $33,263.04.
The parties executed a release on March 9. The town paid Roberts $24,407.26, in exchange for which he agreed to “release, discharge and forever renounce any and all further claims against” the town “for any and all past due wages, penalty wages, K-time, vacation pay, compensation of any nature and attorney’s fees arising from the employment” of Roberts by the town. The document also recited that the “payment referred to herein includes 33 days of penalty wages at the rate of $115.70/day, 160 hours of vacation pay as well as K-time accrued” during Roberts’s employment.
Roberts admitted signing the release and cashing the two checks that constituted his settlement, but testified that this amount covered only 33 days of penalty wages, 160 hours of vacation pay and unpaid K-time.
After retaining new counsel, Roberts filed this suit against the town in August 2011. He alleged that he had “never been terminated from his position” under the procedure set forth by statute.[2] He demanded past due wages, penalty wages, amounts paid for prescription medications since January 11, 2011, and reinstitution of medical coverage.
The town responded that it effectively removed Roberts from office as soon as it properly appointed his successor and that he waived any remaining claims by signing the release and accepting the cash settlement.[3]
| ^Action of the District Court
At trial in May 2012, the three witnesses — Mayor Thompson, Roberts and the town clerk, Melba Holland — testified as outlined above. In July, the court rendered reasons for judgment finding that the town did not comply with R.S. 33:404 A(3) in removing Roberts from office. As for the release, the court conceded that “some of the language” indicated that Roberts renounced any and all further claims, but the last paragraph indicated that the payment included only the 33 days of pen *1048 alty wages at $115.70 a day, 160 hours of vacation pay and unpaid K-time, a fact Roberts confirmed in his testimony. The court found the release “was only for what it says,” K-time, vacation pay and penalty wages, “and would have nothing to do with this lawsuit.” The court gave the parties 10 days to brief “their assessment of what damages would be [due] to David Roberts.”
On October 9, the court rendered judgment awarding Roberts $36,649.93.[4] The town has appealed, raising two assignments of error.

Discussion

By its first assignment of error, the town urges the court erred in finding that the actions of the town and board of aider-men did not constitute the lawful termination of Roberts as fire chief. The town contends that it complied with R.S. 33:404 A(3) when the board unanimously accepted the mayor’s recommendation to name Treadway as the new fire chief. The Jonesboro Code of Ordinances, § 9 — 1(b), establishes only one fire chief;[5] |4state law, R.S. 44:2, clarifies that every public officer shall discharge his duty “until his successor is inducted into office”; and as a factual matter, Roberts was never in doubt that he had been replaced. The town concludes that Roberts was formally and legally removed from office effective January 11, 2011.
Roberts responds that the town did not follow the provisions of R.S. 33:404 A(3): the statute does not say a town may legally remove a fire chief simply by appointing a new one. In support, he cites La. Atty. Gen. Op. 95-216 (1996)[6] and argues that R.S. 42:2 does not apply, as an appointed department head is not a “public officer.”
As noted, the Lawrason Act, specifically La. R.S. 33:404 A(3), states that the removal of a department head, such as the fire chief, “shall be subject to approval by the board of aldermenf.]”
This court has previously held that the mayor and board of aldermen may satisfy the requirements of the Lawrason Act by substantial compliance with its provisions. Ginn v. Village of Bonita, 62 So.2d 159 (La.App. 2 Cir.1952). Moreover, the supreme court has held that another term used in R.S. 33:404 must “be given its broadest possible interpretation in order to enable the mayor to exercise” his powers under the Act. Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962). While strict compliance is to be preferred, we find that the procedure followed here substantially complied with R.S. 33:404 B(3). There is absolutely no doubt that the mayor’s |smotion to appoint a new fire chief, and the board’s unanimous approval, constituted official action to remove Roberts from that position. Moreover, the record plainly shows that Roberts received Mayor Thompson’s letter setting forth the intended personnel change, he attended the board meeting in which he was replaced, and he rendered no further services as fire chief after January 11. Roberts simply cannot argue that he or anybody else did *1049 not understand the effect of the board’s action. In light of the substantial compliance with R.S. 33:404 A(3) and the full notice to Roberts, the district court committed legal and factual error in finding that the town never properly terminated Roberts. This assignment of error has merit.
By its second assignment of error, the town urges the court erred in awarding Roberts money for past due wages despite the release executed by the parties. It cites the portion of the release referring to “all further claims against the town” for “compensation of any kind,” as well as Roberts’s demand letter, which raised a “final wage claim under R.S. 23:631 et seq.” Although the reasons for judgment do not state this, the town submits that the court found that the release applied only to past due wages or other compensation as of March 9, 2011, and thus awarded penalty wages that accrued after that date. The town argues that the release of “further claims” completely refutes this finding. The release is clear and unambiguous, and public policy favors compromise agreements. Hudson v. Progressive Security Ins. Co., 43,857 (La.App. 2 Cir. 1/8/09), 1 So.3d 627, writ denied, 2009-0235 (La.3/27/09), 5 So.3d 148. It concludes that Roberts is bound by the terms of the release and is due no more damages.
| (¡Roberts responds that the court properly interpreted the release to comprise only K-time, vacation pay and 33 days of penalty wages, exactly as he testified. He also argues that to apply a credit for the release would violate the collateral source rule as stated in Bellard v. American Central Ins. Co., 2007-1335 (La.4/18/08), 980 So.2d 654.
A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La. C.C. art. 3076. A compromise does not affect rights subsequently acquired by a party, unless those rights are expressly included in the agreement. La. C.C. art. 3078. A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3080. A compromise agreement, like other contracts, is the law between the parties and must be interpreted according to the parties’ true intent. Suire v. Lafayette Consol. City-Parish Govt., 2004-1459 (La.4/12/05), 907 So.2d 37. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046; Brown v. Drillers Inc., 93-1019 (La.1/14/94), 630 So.2d 741.
This court has previously held that a release of “any and all claims” constitutes a waiver of all claims between the parties. Hudson v. Progressive Security Ins. Co., supra; Dumas v. Angus Chem. Co., 31,969 (La.App. 2 Cir. 8/20/99), 742 So.2d 655, writ not cons., 99-2750 (La.11/5/99), 751 So.2d 237. A release is not vague simply because it is broad. Id. As in Hudson and Dumas, the instant release refers to “any and all further claims” against the town for “any and all past due wages, penalty wages, K-time, vacation pay, compensation of any nature and attorney’s fees arising from the employment” (emphasis added). This is plainly a waiver of all further claims for wages and other benefits of employment. The final paragraph of the release merely explains how the parties calculated the total, notably the waiver of attorney fees which would have been due under R.S. *1050 23:682. It in no way limits the scope of the release. The district court’s finding to the contrary was legally and factually wrong. After executing the release and accepting the settlement proceeds, Roberts had no further claims against the town of Jonesboro.

Conclusion

For the reasons expressed, the judgment is reversed and judgment is rendered dismissing Roberts’s claims with prejudice. All costs are to be paid by the plaintiff, David Roberts.
REVERSED AND RENDERED.

. The town is a Lawrason Act municipality governed by a mayor and board of aldermen, La. R.S. 33:321, et seq.

. The applicable section of the Lawrason Act, La. R.S. 33:404 A(3), states in pertinent part: "However, the appointment or removal of a nonelected chief of police ⅜ * ⅜ or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the may- or shall prevail.”

. The town did not file an exception of res judicata, but its answer asserted the preclu-sive effect of the release and this court may notice the exception under La. C.C.P. art. 927 B.

. The record does not contain Roberts’s memorandum as to quantum, and the court provided no additional explanation for this oddly precise figure.

. “There is hereby established the position of chief of the fire department. The chief shall have charge of all fire department equipment and the use thereof. (Ord. No. 274, 9 — 13— 49)”

."R.S. 33:404 A(3) allows a department head to remain in that position until he is removed by the mayor, and the removal is approved of [sic] the board of aldermen. * * * [A]s stated in both statutes, the department head cannot be removed * * * without the approval of the board.”