WILLIAMS, J.
The plaintiff, J.B. Duke McHugh, appeals a district court's judgment sustaining a peremptory exception of res judicata filed by the defendant, Clayton Collins Coon. For the following reasons, we affirm.
FACTS
The plaintiff, Dr. J.B. Duke McHugh, and the defendant, Dr. Clayton Collins Coon, are gastroenterologists. The parties formed, managed, and owned various medical entities, including Gastrointestinal Consultants ("GC"), a Professional Medical Corporation. On July 1, 2011, Coon left GC to join a competing gastroenterology practice; however, he continued to be a 50% percent shareholder in GC. McHugh continued *226 to conduct his medical practice at GC.
Thereafter, Coon filed a lawsuit against McHugh alleging breach of fiduciary duty, fraud and other claims seeking damages and/or reimbursement from McHugh. On March 30, 2015, the parties entered into a detailed 19-page agreement entitled, "Settlement Agreement," in which they agreed to resolve the lawsuit and various claims. However, the amount of the settlement continued to be an issue, i.e. , Coon asserted that McHugh was required to reimburse him approximately $1.4 million, based upon amounts provided by Coon's accountant. Conversely, McHugh maintained that Coon was entitled to reimbursement in the amount of approximately $50,000, based upon figures provided by McHugh's accountant.
Thereafter, by virtue of the settlement agreement, the parties agreed to appoint Ted Grace, a certified public accountant, as an independent "arbiter and/or consultant" to determine the sum owed by McHugh to Coon. The settlement agreement also contained a provision that the claims submitted to Grace would be "compromised and dismissed for res judicata purposes " and would be "final, binding, and non-appealable. " (Emphasis added). After executing the settlement agreement, the parties filed a joint motion to dismiss the underlying lawsuit, with prejudice in accordance with the language set forth in the agreement.
Subsequently, on September 15, 2015, Grace issued an initial report. However, McHugh disagreed with the methodology employed and the information considered by Grace. Thereafter, Grace issued a revised report, reducing the amount McHugh owed by $24,000. Ultimately, McHugh agreed to pay Coon $365,000. Although McHugh later paid the full sum owed to Coon, he remained dissatisfied with Grace's report and findings.
On June 3, 2016, McHugh filed a pleading entitled "Motion to Vacate or Modify Arbitration Award." He argued that because they used the term "arbiter," in referring to Grace, when they executed the settlement agreement, the document was transformed from a settlement agreement to an arbitration agreement.
In response, Coon filed a peremptory exception of res judicata, arguing that McHugh's motion was barred by the language set forth in the compromise and settlement agreement. Coon also argued that the parties never entered into an arbitration agreement, and the claims asserted in the underlying lawsuit were "compromised and dismissed for res judicata purposes" pursuant to the agreement.
Following a hearing, the district court denied McHugh's motion and sustained Coon's exception of res judicata. The court found that the document executed by the parties was a settlement agreement, not an arbitration agreement, stating:
A careful and close reading of this document as a whole, with a specific focus on the intent of the parties as revealed from the four corners of the document demonstrates that the manifest intent of the parties in crafting the document was, as previously noted by the Court, to reach a final settlement and compromise of their disputed claims and contentions. This fact is clearly manifest in the length of the document and the careful and specific words, phrases and language used to convey the parties' intent. Noteworthy here is the fact that at no point in the document do the parties refer to the applicab[ility] of the Louisiana arbitration law to their agreement; nor, do they use or refer to the terms "arbitration" or "arbitrator" in the agreement. While it is true that the term "arbiter" is used in various parts of the document and paragraph *227 2.1.2 defines the role and scope of the arbiter's duties and responsibilities, these minor references or passages standing alone do not, in any way, change the nature or character of the agreement, the intent of the parties or convert the agreement as a whole to an arbitration agreement between the parties.
* * *
[T]he Court declines to accept Respondent's invitation to interpret the parties' agreement as an arbitration agreement. In the Court's view, to do so would violate the law and the clear intent of the parties as expressed in their settlement agreement.
* * *
The Court further finds that counsel for Respondent has clearly misinterpreted the parties' agreement in this case as an arbitration agreement, which, in truth and fact, it is clearly an EXPERT DETERMINATION AGREEMENT.
* * *
(Emphasis in original).
McHugh appeals.
DISCUSSION
McHugh contends the district court erroneously sustained Coon's peremptory exception of res judicata. He argues that their written agreement was an arbitration agreement, rather than a settlement agreement. He further claims that his true intent was to dismiss the claims in the underlying lawsuit and submit the remaining claims to arbitration, while maintaining his rights under the Louisiana Arbitration Act. McHugh asserts that the agreement referenced Grace, the accountant, as "arbiter." Therefore, according to McHugh, it is clear that the parties intended to refer the remaining claims to arbitration, rather than settling them and dismissing the lawsuit with prejudice. He maintains that "any rational, reasonable minded person would conclude that Grace's report was the result of the arbitration he conducted between the parties, and as such, the provisions of the Arbitration Act are applicable to Grace's report[.]"
Res judicata precludes the relitigation of all causes of action arising out of the same transaction and occurrence that were the subject matter of a prior litigation between the same parties. Oliver v. Orleans Parish Sch. Bd. , 2014-0329 (La. 10/31/14), 156 So.3d 596 ; Hawkins v. Span Sys., Inc./DFW Int'l Airport OCIP , 51,378 (La. App. 2 Cir. 5/17/17), 223 So.3d 593. The purpose of res judicata is judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence. Oliver v. Orleans Parish Sch. Bd. , supra.
While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where the opposing parties have entered into a compromise or settlement of a disputed matter. Thus, compromises have the legal efficacy of the thing adjudged. Penton v. Castellano , 49,843 (La. App. 2 Cir. 6/24/15), 169 So.3d 739 ; Flanigan v. City of Shreveport, 45,459 (La. App. 2 Cir. 10/27/10), 50 So.3d 938. The pleader must establish, by a preponderance of the evidence, the essential facts to sustain the plea of res judicata. Hawkins v. Span Sys., Inc./DFW Int'l Airport OCIP , supra ; Eddens v. Exceptional Client Care LLC , 48,747 (La. App. 2 Cir. 2/26/14), 135 So.3d 784.
A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A compromise precludes the parties from *228 bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3080.
A compromise agreement, like other contracts, is the law between the parties and must be interpreted according to the parties' true intent. Suire v. Lafayette Consol. City-Parish Govt., 2004-1459 (La. 4/12/05), 907 So.2d 37 ; Roberts v. Town of Jonesboro , 48,396 (La. App. 2 Cir. 8/7/13), 122 So.3d 1045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046; Brown v. Drillers Inc. , 93-1019 (La. 1/14/94), 630 So.2d 741 ; Roberts v. Town of Jonesboro , supra. Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it. Rivett v. State Farm , 508 So.2d 1356 (La.1987) ; Klebanoff v. Haberle , 43,102 (La. App. 2 Cir. 3/19/08), 978 So.2d 598.
In the instant case, the agreement signed by the parties and their attorneys provides, in pertinent part:
SETTLEMENT AGREEMENT
Be it known that, effective as of the 30th day of March, 2015 ("Effective Date "), before the undersigned notaries public * * *, and in the presence of the undersigned legal and competent witnesses, personally came and appeared each of the following (individually, collectively, and interchangeably the "Parties "), who have made and entered into this Settlement Agreement ("Settlement " or "Agreement "), as of the Effective Date, as follows:
* * *
AGREED
NOW THEREFORE in consideration of the foregoing and the benefits to each, the Parties declare, acknowledge and agree as follows:
1. Settlement. The Parties have agreed to resolve all disputes among them as of the Effective Date through this Settlement and the various documents to be executed in conjunction with the same, and through the separate related matters otherwise referenced herein as provided below, including through the compromise and settlement of the claims, the dismissal of the Suit with prejudice , the entry of the Interim Management Agreement, and related documents that may be recommended by Expert Counsel, all as herein authorized, and effective as may be provided herein or in the related documents. * * * Upon execution of this Agreement and the payment of the Transcription Payment, as herein provided, the Suit will be promptly dismissed with prejudice.
2. Settlement of Claims. The Parties have agreed to compromise and settle all Claims, other than the Remaining claims , under the following terms and conditions, with capitalized terms having the following meanings:
"Claims " means any and all claims, actions and causes of action between or among any of the Parties whatsoever from the beginning of time through the Effective Date, other than the Remaining Claims. Without limiting the foregoing, "Claims" includes all claims made or that could have been made in the Suit, and except for the Remaining Claims , if any, and includes but is not limited to any claims for damages or accounting arising out of any acts or omissions or out of negligence, gross negligence, intentional negligence, breach of contract, breach of fiduciary duty or duty of loyalty, conversion, fraud, bad faith, ultra vires acts, receivership, dissolution *229 or liquidation of the Entities, or other acts or omissions of any nature or sort whatsoever.
Without limiting the foregoing, Claims includes all of the following:
* * *
(iv) Any Claims and all other Claims of any nature or sort other than the Remaining Claims, if any, and the Referred Claims to the extent that they will be determined by the Consultant and/or Arbiter as set out herein.
"Referred Claims " means the following specific claims, actions or causes of action between or among the Parties, each of which is itemized as follows, but no others, and are claims which are compromised and dismissed for res judicata purposes but are being referred to the Consultant, Arbiter, or Expert Counsel for final determination between the Parties ...[.]
* * *
2.1.2 Arbiter. The Parties have agreed to resolve the disputed financial Claims including appropriate Referred Claims by appointing Ted Grace, CPA (the "Arbiter "), to review the books, records and other information provided to him by Booth and/or May & Company that relate to the alleged $1.4 million dollars in dispute. * * *
By referring such disputed claims to the Arbiter and/or Consultant for final determination, the Parties are agreeing and do hereby expressly agree that the decision of such Arbiter and/or Consultant to such matters as are referred to the same will be final, binding, and non-appealable , and enforceable by separate suit in the event of non-payment.
* * *
("Bold" emphasis in original; "italic" emphasis added).
After reviewing this record and the settlement agreement provided, we find that the use of the term "arbiter" does not transform the agreement from a settlement agreement to an arbitration agreement. There is no language in the document to indicate that the parties intended to enter into an arbitration agreement. In fact, the agreement was specifically entitled "SETTLEMENT AGREEMENT." Additionally, pursuant to the language set forth in the agreement, the parties agreed that the underlying lawsuit would be "compromised and dismissed for res judicata purposes," despite the fact that certain disputed financial claims were being referred to the CPA for review. Furthermore, the parties expressly agreed that Grace's decision would be "final, binding, and non-appealable." The provisions of the settlement agreement are clear and unambiguous and constitute the "law" between these parties. Accordingly, we find that the district court did not err in sustaining Coon's exception of res judicata and dismissing McHugh's motion to vacate the award. This assignment of error lacks merit.[1]
CONCLUSION
The district court's ruling sustaining the exception of res judicata filed by the appellee, Clayton Collins Coon, is hereby affirmed. Costs of this appeal are assessed to the appellant, J.B. Duke McHugh.
AFFIRMED.

Because we have found that the agreement entered into by the parties was a settlement agreement, we will not address the district court's determination that the agreement was an "expert determination agreement."